WALLACE, Circuit Judge:
Miroyan and McGinnis appeal from their convictions for several drug-related offenses. They raise several contentions, including a serious issue regarding the sensitive balance between the official use of sophisticated electronic surveillance devices and fourth amendment rights. Their fourth amendment contention is foreclosed, however, by recent decisions of this court and, since the remaining assertions are unpersuasive, we affirm.
I
In early May 1976, Miroyan made arrangements with Aero Trends, Inc. in San Jose, California, to rent a Cessna aircraft from 2:00 p. m. on May 8, 1976 through May 14, 1976. On May 7, a Drug Enforcement Administration agent obtained a United States Magistrate’s order authorizing the installation of an electronic tracking device on the Cessna airplane. Pursuant to this order, a transponder[1] was installed in the aircraft. Significantly, the transponder was installed with the express permission of the aircraft’s owner and was installed prior to the commencement of the rental period.
On May 8, Miroyan and McGinnis departed in the rented airplane. Federal agents pursued the Cessna in a United States Customs aircraft and monitored the Cessna’s journey by means of both the transponder’s signals and visual sightings. The officers tracked the Cessna to Palm Springs, California where it landed and remained the night.
On May 9, Miroyan and McGinnis departed Palm Springs in the Cessna and were again followed by federal officers in the Customs airplane. The officers maintained visual surveillance for approximately four hours and observed the Cessna enter the Republic of Mexico and proceed to Cuidad Obregon where it landed. Thereafter, the officers discontinued surveillance and returned to the United States.
On May 11, two days after surveillance had been suspended, the officers were notified by Customs personnel in Phoenix that they had picked up a transponder’s signal which indicated that the aircraft to which it was attached was approximately eighty miles south of the Mexican border and heading north. The Customs agents again took to the air and established visual contact with the Cessna about twenty miles south of the border. The agents followed the Cessna north and observed it make a series of evasive-like maneuvers. About 3:30 p. m. the Cessna landed at the Lompoc, California airport. McGinnis disembarked and proceeded to a Lompoc motel. After leaving McGinnis in Lompoc, Miroyan flew the Cessna to the nearby Santa Ynez air *492 port. Shortly after his arrival, Miroyan and another individual were arrested while in the process of transferring several hundred pounds of marijuana from the Cessna to a pickup truck. McGinnis was thereafter arrested at his motel in Lompoc.
Miroyan and McGinnis were separately tried and convicted of conspiracy to possess a controlled substance with intent to distribute, importation of a controlled substance, and possession of a controlled substance with intent to distribute. Additionally, Miroyan was convicted of a firearms violation.
II
The primary argument asserted on appeal is that the district judge improperly refused to suppress the marijuana and other evidence obtained as a result of the use of the transponder. The heart of their argument is that the installation of the transponder and the monitoring of its signals constituted a search or searches within the meaning of the Fourth Amendment. Therefore, it is argued, the resulting evidence is inadmissible unless the use of the transponder was authorized by a valid search warrant. Mi-royan and McGinnis then make a detailed attack on the affidavit upon which the magistrate’s order was founded, arguing that it does not satisfy the rules announced in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
A review of our relevant decisions leads us to conclude that under the particular facts of this case, a search warrant was not required and, therefore, we need not determine the validity of the magistrate’s order.
In our prior decisions dealing with the use of electronic tracking devices we have established a bifurcated analytical framework which examines the fourth amendment implications of both the installation or attachment of the device and the monitoring of the device’s signals. See United States v. Pretzinger, 542 F.2d 517, 520 (9th Cir. 1976); United States v. Hufford, 539 F.2d 32, 34 (9th Cir.), cert. denied, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976); see generally Note, Tracking Katz: Beepers, Privacy, and the Fourth Amendment, 86 Yale L.J. 1461, 1465 (1977).
Applying initially the second branch of this analysis, we have previously held that
[u]nder the law of this circuit, . attachment of an electronic location device to a vehicle moving about on public thoroughfares (or through the public airspace) does not infringe upon any reasonable expectation of privacy and therefore does not constitute a search. . Consequently, no warrant is needed . unless fourth amendment rights necessarily would have to be violated in order to initially install the device.
United States v. Pretzinger, supra, 542 F.2d at 520. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576 (1967). To a great degree, our holding in Pretzinger was premised on our prior decision in United States v. Hufford, supra, 539 F.2d 32. In Hufford we considered the fourth amendment problems associated with the use of a beeper to track an automobile. Concluding that we could “see no distinction between visual surveillance and the use of an electronic beeper to aid the agents in following the movements of an automobile along public roads,” id. at 34, we held that the mere use of the beeper for this purpose did not violate a reasonable expectation of privacy and therefore was not a search for fourth amendment purposes. Id. at 33-34.
On the basis of these cases, we are compelled to hold that the use of the transponder merely to monitor the location of the aircraft as it passed through public airspace was not a search subject to fourth amendment strictures. See United States v. Curtis, 562 F.2d 1153 (9th Cir. 1977). In both Pretzinger and Hufford, however, we stated that even though the monitorial use of the device cannot constitute a search, the installation or attachment could violate fourth amendment precepts. Accordingly, we return to the first branch of the analysis to determine if, under the specific facts of this case, the installation of the transponder violated fourth amendment rights. We hold that it did not.
*493 The record clearly establishes that the transponder was installed with the express consent of the aircraft’s owner while the plane was within his complete dominion. Miroyan argues, however, that because he had contracted to rent a specifically designated aircraft, he could reasonably expect the plane to “be free of a ‘probing, exploratory quest for evidence’ between the time of his rental and actual departure in the craft.” We have already considered this precise argument:
The appellants have argued that [the aircraft’s owner] had no authority to grant to the officers permission to install the transponder. They base this argument upon the fact that the agreement for the rental of the plane had been made prior to the transponder’s installation. We reject the argument. The installation occurred before the time for the commencement of the rental period. The owner of the plane had full control and dominion over it at the time, and it seems logical to us that the owner, through its agent, had the right at that time to install within its airplane any instrument that would not be physically dangerous to occupants of the plane.
United States v. Curtis, supra, 562 F.2d at 1156 n.l. Accord, United States v. Abel, 548 F.2d 591, 592 (5th Cir.), cert. denied, 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977); cf. United States v. Hufford, supra, 539 F.2d at 34.
We therefore hold that the installation of the transponder, performed with the consent of the aircraft’s owner and while the plane was within his dominion, did not violate the fourth amendment rights of Miroyan or McGinnis.
Ill
McGinnis alone raises several additional contentions, none of which requires extended discussion. First, he argues that the officer who actually effected his arrest at the motel in Lompoc did not have probable cause to do so. We disagree. At the time of the arrest, the investigating officers knew that McGinnis had accompanied Mi-royan on the flight into Mexico and that he had disembarked and left Miroyan only minutes before Miroyan was found unloading approximately 580 pounds of marijuana from the plane. On these facts, the officers clearly had probable cause to believe that McGinnis was a participant in the smuggling venture.
McGinnis argues, however, that at the instant of his capture, the arresting officers did not have sufficient data with which to identify him as the individual who had made the Mexican excursion and exited the plane at the Lompoc airport. We again disagree. The arresting officers were told that McGinnis was in his twenties, had brown hair, was wearing levis and was carrying a gray knapsack. Additionally, the officers were informed that McGinnis had been driven by cab to the Vandenberg Motel in Lompoc. Upon their arrival at the Vandenberg Motel, the arresting officers saw McGinnis standing in a phone booth and observed that he matched the physical description but that he was not carrying a knapsack. The officers then asked the motel manager whether anyone matching the description and carrying a knapsack had checked in within the previous fifteen minutes. The manager answered affirmatively and pointed to McGinnis in the phone booth. On these facts, we conclude that McGinnis’ arrest was properly founded on probable cause. See Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).
IV
After arresting McGinnis, the officers obtained a search warrant for his motel room. At trial, McGinnis sought to suppress the evidence discovered in the resulting search on the grounds that the affidavit upon which the warrant was based was insufficient. See Spinelli v. United States, supra, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Aguilar v. Texas, supra, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. He renews this contention on appeal.
Our standard to review this contention has been carefully articulated:
*494 On appeal, the test to be applied by this court is that “[t]he facts submitted to the Commissioner must be sufficient to justify a conclusion by him that the property which is the object of the search is probably on the person or premises to be searched at the time the warrant is issued.”
United States v. Mulligan, 488 F.2d 732, 735 (9th Cir. 1973), cert. denied, 417 U.S. 930, 94 S.Ct. 2640, 41 L.Ed.2d 233 (1974) (citation omitted). Viewing the affidavit in this light, we believe that the warrant was properly issued.
Disregarding, as we may, the factual allegation in the affidavit which the government concedes was improper,[2] United States v. Giordano, 416 U.S. 505, 555, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part); Howell v. Cupp, 427 F.2d 36, 38 (9th Cir. 1970), the remaining allegations adequately support the issuing magistrate’s conclusion as to probable cause. The affidavit set forth all of the factual material relating to the officer’s probable cause to arrest McGinnis. In addition, the affidavit alleged that after leaving the plane, McGinnis telephoned for a taxi; that after arriving at the airport, the taxi driver observed that McGinnis had discarded several bullets into a trash can; and that McGinnis then walked to another trash can and retrieved a package about the size of a lunch sack and placed the package in his knapsack. At the instant of his arrest, McGinnis had already rented the motel room and did not have the package or the knapsack in his possession. Keeping in mind that the affidavit also set forth in detail McGinnis’ observed participation in the marijuana smuggling venture, we conclude that the issuing judge’s conclusions that McGinnis had probably been carrying contraband and that such contraband was probably in the rented motel room were the type of “normal inferences” which he was entitled to draw. See United States v. Bowers, 534 F.2d 186, 192 (9th Cir.), cert. denied, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 311 (1976); United States v. Spearman, 532 F.2d 132, 133 (9th Cir. 1976); United States v. Lucarz, 430 F.2d 1051, 1055 (9th Cir. 1970).
V
McGinnis next argues that the district judge committed reversible error by explaining to the panel of prospective jurors that one of McGinnis’ indicted co-conspirators had previously pleaded guilty. After counsel’s objection, the district judge carefully instructed the jury not to consider the fact that a co-conspirator had pleaded guilty.
We doubt that this type of “plain and nonargumentative statement” is error at all. See United States v. Washabaugh, 442 F.2d 1127, 1129 (9th Cir. 1971); United States v. Jones, 425 F.2d 1048, 1053-54 (9th Cir.), cert. denied, 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); Davenport v. United States, 260 F.2d 591, 596 (9th Cir. 1958), cert. denied, 359 U.S. 909, 79 S.Ct. 585, 3 L.Ed.2d 573 (1959). In any event, the error, if any, was adequately cured by the trial judge’s thorough cautionary instruction. See Fed.R.Crim.P. 52(a).
VI
During the trial, a revolver and a small amount of marijuana, which had been *495 seized in the search of the motel room, were admitted over objection. McGinnis now concedes that these items were probative— and therefore relevant, Fed.R.Evid. 401— with respect to the issues for which they were admitted. He argues, however, that their probative value was exceeded by their prejudicial effect and therefore should have been excluded. See Fed.R.Evid. 403. This determination rests squarely within the sound discretion of the trial judge. See, e. g., United States v. Cannon, 472 F.2d 144, 145 (9th Cir. 1972). There was no abuse of discretion here.[3]
VII
McGinnis’ final assertion[4] is that 21 U.S.C. §§ 841, 952, 960, and 963 are unconstitutional. The essence of this familiar argument is that these statutes unreasonably and irrationally categorize marijuana as a Schedule I controlled substance. See 21 U.S.C. § 812(c), Schedule I (c)(10). Marijuana, argues McGinnis, cannot rationally be deemed to meet the criteria required for a Schedule I substance: high potential for abuse, no currently accepted medical use, and lack of accepted safety under medical supervision. Id. § 812(b)(1).
We need not again engage in the task of passing judgment on Congress’ legislative assessment of marijuana. As we recently declared, “[t]he constitutionality of the marijuana laws has been settled adversely to [McGinnis] in this circuit.” United States v. Rogers, 549 F.2d 107, 108 (9th Cir. 1976); accord, United States v. Kiffer, 477 F.2d 349 (2d Cir.), cert. denied, 414 U.S. 831, 94 S.Ct. 165, 38 L.Ed.2d 65 (1973); see also United States v. Lustig, 555 F.2d 737, 750 (9th Cir. 1977); United States v. Rodriquez-Camacho, 468 F.2d 1220, 1221-22 (9th Cir. 1972), cert. denied, 410 U.S. 985, 93 S.Ct. 1512, 36 L.Ed.2d 182 (1973).
AFFIRMED.

. A transponder is an electronic instrument which enables its user to track the movements of a vehicle or other object to which it is attached. It is, of course, a member of the genus of devices to which we often refer as “beepers.” See generally Note, Tracking Katz: Beepers, Privacy, and the Fourth Amendment, 86 Yale L.J. 1461 (1977).

. After capturing McGinnis, the arresting officer proceeded to the rented motel room, ostensibly for the purpose of detecting additional conspirators. After announcing his identity and presence several times, the officer opened the room and quickly looked for additional subjects. During this process, he observed a gray knapsack on the bed. The officer then retreated and secured the room until the warrant was obtained.
In the affidavit upon which the warrant was based, the officer stated that he had observed the knapsack. On appeal, the government concedes that the room was illegally entered and therefore the observance of the knapsack was an improper component of the officer’s affidavit. The affidavit, however, may nevertheless be sustained if the remaining factual allegations are otherwise sufficient. Believing this to be the case here, we express no opinion regarding the accuracy of the government’s concession.

. During his instructions to the jury, the district judge reminded the jury that McGinnis was not charged with any offense directly pertaining to the gun or the small quantity of marijuana. He therefore instructed the jury that they could consider the evidence only for the “limited purpose” of criminal intent, i. e., that McGinnis knew that the material imported was a controlled substance.

. McGinnis also contends that certain of the motel’s business records were erroneously admitted at trial. If there was any error in this regard, however, it was indisputably harmless. Fed.R.Crim.P. 52(a).