UNITED STATES of America,
Plaintiff–Appellee,

v.

JUVENILE MALE, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

JUVENILE MALE, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

JUVENILE MALE, Defendant–Appellant.

Nos. 96–10473, 96–10474, 96–10477.

United States Court of Appeals,
Ninth Circuit.

Submitted June 12, 1997.*

Decided July 8, 1997.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a) and Ninth Circuit Rule 34–4.

·Carmen L. Fischer, Phoenix, AZ, for defendant-appellant N.P.

Thomas A. Gorman, San Diego, CA, for defendant-appellant M.A.C.

Charles M. McNulty, Wisdom & Logan, Phoenix, AZ, for defendant-appellant R.B.

Patrick J. Schneider, Assistant United States Attorney, Phoenix, AZ, for plaintiff-appellee, United States of America.

Before: GOODWIN, D.W. NELSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

## OVERVIEW

Three juvenile defendants—R.B., N.P., and M.A.C. (collectively, "Defendants")—appeal the district court's orders transferring them for prosecution as adults on charges of conspiracy to participate in a racketeering enterprise, in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d).[1] Defendants contend that the district court erred in concluding that the Government need only show that their acts had a "de minimis" effect on interstate commerce in order for the court to have jurisdiction in a RICO prosecution. In addition, juvenile N.P. argues that the RICO conspiracy count is not a "crime of violence" under 18 U.S.C. § 5032–a necessary predicate to transferring a juvenile for adult prosecution. Lastly, juvenile M.A.C. argues that the district court erred in transferring M.A.C., an Indian, for adult prosecution because the indictment did not allege one of the thirteen offenses listed in the Indian Major Crimes Act, 18 U.S.C. § 1153. We find no

---

1. In addition to the RICO counts, the juveniles were charged with the following: 1) juvenile R.B.—Hobbs Act robbery (18 U.S.C. §§ 1951, 5031–37), conspiracy to commit arson (18 U.S.C. §§ 1153, 371, and 81), and witness tampering (18 U.S.C. § 1512(b)(3)); 2) juvenile N.P.—conspiracy to commit arson (18 U.S.C. §§ 1153, 371, and 81), arson (18 U.S.C. §§ 1153 and 81), and witness tampering (18 U.S.C. § 1512(b)(3)); and 3) juvenile M.A.C.—witness tampering (18 U.S.C. § 1512(b)(3)).

error in the district court's transfer orders, and we affirm.

## BACKGROUND

The following facts are taken from the testimony of Detective Karl Auerbach of the Salt River Pima–Maricopa Indian Community Police Department, who testified in the district court during an October 4, 1996 transfer hearing on the Government's motion to proceed against the juveniles as adults. We recognize that Defendants have not been convicted of these allegations.

Defendants were all members of the "Rolling 30's" Crips gang. In the early 1990's, the gang began having problems with other gangs on the Salt River Reservation who would cross out Defendants' gang graffiti and replace it with their own. Ultimately, Defendants' gang began to acquire firearms because of conflicts with other gangs.

In April 1994, the gang implemented a plan to commit armed robberies as a way of acquiring money with which to purchase additional firearms. On May 15, 1994, "Rolling 30's" Crips gang members, including juvenile R.B., robbed a Subway sandwich store located on the Salt River Reservation. The robbers took a bank bag containing $100.00, along with seven sandwiches and five bags of potato chips. The gang members murdered the lone Subway employee working during the robbery. The firearm used during the robbery had been transported in interstate commerce.

The Subway store was a franchise of the Subway Corporation in Milford, Connecticut. Most of the items purchased and sold by this particular store were acquired through interstate commerce. For example, the meats, cheeses, bread dough, cookies, paper and plastic products, and uniforms used by the restaurant were purchased from distributors outside of Arizona. In addition, a certain percentage of the profits of this store were paid out in royalties to an organization based in Connecticut.

As a result of the robbery, the Subway restaurant was forced to close for approximately two or three days, and the store experienced a significant decrease in sales and revenue for some period of time. Every employee working at that Subway quit after the murder.

In addition to the Subway robbery, "Rolling 30's" Crips gang members committed a series of other crimes, including arson, assault, robbery, and murder.

On August 13, 1996, the United States filed a twelve-page information charging Defendants, along with other juvenile members of the "Rolling 30's" Crips, with numerous federal offenses committed between April of 1994 and December of 1995.

On October 11, 1996, the district court made specific factual findings pursuant to 18 U.S.C. § 5032, as to whether the Defendants could be prosecuted as adults. Finding that each Defendant qualified for transfer, the district court then ordered Defendants transferred for adult prosecution. The district court also rejected Defendants' arguments that, because their activities did not substantially affect interstate commerce, the district court lacked jurisdiction to hear the cases. Defendants appeal the transfer orders.

## STANDARD OF REVIEW

We generally review de novo a district court's assumption of jurisdiction. *United States v. Matta–Ballesteros,* 71 F.3d 754, 762 (9th Cir.1995), *amended on other grounds,* 98 F.3d 1100 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997). However, the question of whether or not Defendants' actions sufficiently affected interstate commerce to provide jurisdiction is a jurisdictional question intertwined with the merits. *United States v. Barone,* 71 F.3d 1442, 1444 n. 4 (9th Cir. 1995). In instances where the question of jurisdiction is intertwined with the merits and must be resolved by a jury, the standard of review is unsettled. *Id.* "Because the question is resolved by the jury, the standard for reviewing the sufficiency of evidence to support a jury verdict, *see Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979), may well apply to this issue." *Id.*

In the instant case, however, we are not reviewing a jury verdict; rather, we are re-

viewing the district court's factual findings based on Detective Auerbach's testimony and its legal conclusions as to whether the factual connection to interstate commerce is sufficient to establish jurisdiction. We therefore review the district court's findings of fact for clear error, and its jurisdictional conclusion de novo.

## DISCUSSION

### I. RICO's Jurisdictional Nexus Requirement.

■ We must determine whether the Government must prove that a defendant's individual racketeering activities had more than a "de minimis effect" on interstate commerce in order to establish federal jurisdiction in a RICO prosecution. Because RICO is aimed at activities which directly affect interstate commerce, we hold that all that is required to establish federal jurisdiction in a RICO prosecution is a showing that the individual predicate racketeering acts have a de minimis impact on interstate commerce.

Relying on *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), Defendants argue that the activities prohibited by RICO must substantially affect interstate commerce. Otherwise, they contend, Congress exceeded its Commerce Clause authority in enacting RICO. In *Lopez*, the Supreme Court held that Congress exceeded its authority under the Commerce Clause by enacting the Gun–Free School Zones Act because possession of a gun in a school zone was not an economic activity that substantially affected interstate commerce. *Id.* at 1634. Since *Lopez*, numerous defendants have made challenges to federal criminal statutes enacted under Congress' Commerce Clause authority. *See, e.g., United States v. Michael R.*, 90 F.3d 340 (9th Cir. 1996) (upholding 18 U.S.C. § 922(x)(2), which prohibits juvenile possession of a handgun); *United States v. Staples*, 85 F.3d 461 (9th Cir.) (upholding 18 U.S.C. § 924(c)(1), which prohibits the use of a firearm while engaged in drug trafficking), *cert. denied,* —— U.S. ——, 117 S.Ct. 318, 136 L.Ed.2d 233 (1996);

*United States v. Lomayaoma*, 86 F.3d 142 (9th Cir.) (upholding the Indian Major Crimes Act, 18 U.S.C. § 1153), *cert. denied,* —— U.S. ——, 117 S.Ct. 272, 136 L.Ed.2d 196 (1996). Neither the Supreme Court nor the Ninth Circuit, however, has decided whether *Lopez* affects the interstate commerce aspect of the RICO statute.

In *United States v. Robertson*, 514 U.S. 669, 670–72, 115 S.Ct. 1732, 1733, 131 L.Ed.2d 714 (1995), the Supreme Court left open the question of whether individual RICO predicate acts must "substantially affect" interstate commerce. In *Robertson,* the defendant was charged with various narcotics offenses and with violating RICO by investing the proceeds of the narcotics offenses in a gold mine. *Id.* at 669–70, 115 S.Ct. at 1732. We reversed the defendant's conviction on the ground that the Government had failed to introduce sufficient evidence proving that the gold mine was engaged in or affected interstate commerce. *Id.; United States v. Robertson*, 15 F.3d 862, 868 (9th Cir.1994), *rev'd,* 514 U.S. 669, 115 S.Ct. 1732, 131 L.Ed.2d 714. The Supreme Court reversed, concluding that the activities of the gold mine operation [2] "assuredly brought the gold mine within § 1962(a)'s alternative criterion of 'any enterprise ... engaged in ... interstate or foreign commerce.'" *Id.* at 671, 115 S.Ct. at 1733. Significant to the instant case, the Supreme Court stated, "[w]hether or not these activities met (and whether or not, to bring the gold mine within the 'affecting commerce' provision of RICO they would *have* to meet) the requirement of substantially affecting interstate commerce," the mine itself engaged in interstate commerce. *Id.* Thus, the Supreme Court left open the question of whether the individual predicate RICO acts must substantially affect interstate commerce.

In *United States v. Atcheson*, 94 F.3d 1237 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1096, 137 L.Ed.2d 229 (1997), we recently addressed the impact of *Lopez* on

---

2. The gold mine operation purchased supplies from out of state, hired out-of-state workers and brought them to Alaska, and exported proceeds from the operation out of state. *Robertson,* 514 U.S. at 670–72, 115 S.Ct. at 1733.

the Hobbs Act, 18 U.S.C. § 1951. We said that, unlike the Gun–Free School Zones Act, "which was aimed at purely local, noneconomic activities, the Hobbs Act is directly aimed at economic activities which 'in any way or degree ... affects commerce.' 18 U.S.C. § 1951(a)." *Atcheson,* 94 F.3d at 1242. Thus, "[b]ecause the Hobbs Act is concerned solely with *inter* state, rather than *intra* state, activities, we conclude that *Lopez*'s 'substantially affects' test is not applicable." *Id.* "Where the crime itself directly affects interstate commerce, as in the Hobbs Act, no requirement of a substantial effect is necessary to empower Congress to regulate the activity under the Commerce Clause." *Id.* at 1242–43. To establish jurisdiction in an individual case under the Hobbs Act, the Government therefore needed only to prove that the crime had a "de minimis effect" on interstate commerce. *Id.* at 1243.

Like the Hobbs Act, the RICO statute contains a similar jurisdictional requirement. *See* 18 U.S.C. § 1962(a), § 1962(b), or § 1962(c) ("any enterprise engaged in, or the activities of which affect, interstate or foreign commerce"). Thus, the RICO statute, like the Hobbs Act, regulates activities which, in the aggregate, have a substantial effect on interstate commerce; hence, the "de minimis character of individual instances arising under [the] statute is of no consequence." *Lopez,* 514 U.S. at 558, 115 S.Ct. at 1629 (citation omitted).

The district court correctly concluded that, because of the similarity between the aims of RICO and the Hobbs Act, *Atcheson* is persuasive authority that guides our analysis in this case. Using *Atcheson* as a guide, we conclude that all that is required to establish federal jurisdiction in a RICO prosecution is a showing that the individual predicate racketeering acts have a de minimis impact on interstate commerce.

Prior Ninth Circuit interpretations of RICO's interstate commerce requirements, as well as two recent out-of-circuit cases examining the jurisdictional requirements of the RICO statute after *Lopez,* support our conclusion. As far back as 1979, we held that, in order to order to establish federal jurisdiction in a RICO prosecution, "[t]he

Government must show a nexus of the enterprise to interstate or foreign commerce, *albeit minimal* ...." *United States v. Rone,* 598 F.2d 564, 573 (9th Cir.1979) (emphasis added; citations omitted). Significantly, *Rone* relied in part on a case interpreting the Hobbs Act jurisdictional requirements. *Id.* (citing *United States v. Phillips,* 577 F.2d 495, 501 (9th Cir.1978)). In 1990, we reiterated that in a civil RICO prosecution, the interstate commerce connection may be "minimal." *Musick v. Burke,* 913 F.2d 1390, 1398 (9th Cir.1990).

More recently, in a non-RICO related case, we stated that, where the regulated activity is commercial in nature, "the government need only prove that the individual transactions in this case each had a *minimal effect* on interstate commerce that, through repetition by others similarly situated, could have a substantial effect on interstate commerce." *United States v. Ripinsky,* 109 F.3d 1436, 1444 (9th Cir.1997) (emphasis added) (affirming money laundering conviction where money laundering statute, 18 U.S.C. § 1957(f), requires that monetary transaction be "in or affecting interstate commerce"). The RICO statute contains a jurisdictional requirement similar to the money laundering statute. *See* 18 U.S.C. § 1962(a), § 1962(b), or § 1962(c) ("any enterprise engaged in, or the activities of which affect, interstate or foreign commerce"). *Ripinsky, Rone,* and *Musick,* all support our holding that the interstate commerce connection in a RICO prosecution may be de minimis.

Since *Lopez,* at least two courts have considered RICO's jurisdictional nexus requirement. In *United States v. Maloney,* 71 F.3d 645, 663 (7th Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 295, 136 L.Ed.2d 214 (1996), the Seventh Circuit stated that "[u]nlike RICO, the statute in *Lopez* 'contain[ed] no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce.'" *Id.* (quoting *Lopez,* 514 U.S. at 561, 115 S.Ct. at 1629). The *Maloney* court noted that in *Robertson,* 514 U.S. at 670–72, 115 S.Ct. at 1733, the Supreme Court left open the question whether, under the affecting commerce provision in RICO, the activi-

ties of the enterprise would have to meet the requirement of substantially affecting interstate commerce. *Maloney,* 71 F.3d at 663. Although the reasoning and language in *Maloney* leads one to believe that the Seventh Circuit would adopt a "de minimis" interstate commerce nexus requirement, the *Maloney* court never actually decided the jurisdictional standard required under RICO. Instead, the court concluded that, under either the "de minimis" or the "substantial affect" jurisdictional standard, there was no plain error. *Id.* at 663–664.

Our conclusion is also supported by the Eleventh Circuit's decision in *United States v. Beasley,* 72 F.3d 1518 (11th Cir.), *cert. denied sub nom. James v. United States,* —— U.S. ——, 116 S.Ct. 2570, 135 L.Ed.2d 1086 (1996). Although the defendants in *Beasley* did not expressly make a *Lopez* challenge, the court concluded that in a RICO prosecution, "[t]o satisfy the interstate commerce requirement, only a *slight effect* on interstate commerce is required." *Id.* at 1526 (emphasis added; citations omitted). Thus, our conclusion that the Government need only show a de minimis effect on interstate commerce is consistent with both prior Ninth Circuit and out-of-circuit decisions.

## II. Defendants' Actions Had a "De Minimis" Effect on Interstate Commerce.

Defendants next contend that their actions did not have a de minimis effect on interstate commerce. This contention is contrary to the findings made by the district court.

■ In *Atcheson,* we clarified what is necessary to prove a de minimis effect on interstate commerce:

To establish a de minimis effect on interstate commerce, the Government need not show that a defendant's acts actually affected interstate commerce. Rather, the jurisdictional requirement is satisfied by proof of a probable or potential impact.

*Atcheson,* 94 F.3d at 1243 (internal quotation and citations omitted). Thus, in *Atcheson,* it was enough that the defendants "attempted to obtain, or obtained, out-of-state credit or ATM cards from each of the victims." *Id.*

■ The evidence in this case establishes that Defendants' activities had a probable or potential impact on interstate commerce. As the district court stated,

defendants allegedly robbed the Subway sandwich franchisee which sends a percentage of its profits to its out-of-state headquarters. In addition to the $100.00 taken, defendants allegedly stole, among other things, sandwiches and chips, many of whose ingredients were purchased from out-of-state suppliers.

In addition, the store was forced to close down for several days after the robbery and murder. New employees had to be hired. Moreover, the firearm used during the robbery had moved in interstate commerce, and the reason for the robbery was to obtain additional firearms (which has a potential impact on interstate commerce). Under these circumstances, the district court did not err in finding that the Government had shown a sufficient impact on interstate commerce for the court to exercise its jurisdiction.

■ Lastly, juvenile M.A.C. argues that it is the activities of the enterprise, not the victim, which must affect interstate commerce. Although he is correct that it is the enterprise's activities which must ultimately affect interstate commerce, he overlooks the possibility that the activities may affect interstate commerce by impacting the victim. Title 18 U.S.C. § 1962(c) provides,

It shall be unlawful for any person ... associated with any enterprise engaged in, *or the activities of which affect,* interstate or foreign commerce, to ... participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity....

(emphasis added). Therefore, a plain reading of the statute permits the district court to assume jurisdiction either if the enterprise engaged in interstate commerce, or if the activities of the enterprise affected interstate commerce. Here, the enterprise robbed the sandwich shop; the robbery affected interstate commerce. We conclude that a district court may look at both the enterprise's activities *and* its impact on the victim to deter-

mine whether the interstate commerce nexus is satisfied.

In light of the above, the district court had jurisdiction over Defendants' cases.

### III. A RICO Conspiracy to Commit Hobbs Act Robberies Is a Crime of Violence for Purposes of the Juvenile Delinquency Act, 18 U.S.C. § 5032.

■ Juvenile N.P. contends that the district court erred by transferring him on the RICO count, because he alleges that a RICO violation is not a crime of violence as required by the Juvenile Delinquency Act, 18 U.S.C. § 5032. Whether or not a conspiracy is a crime of violence is a question of statutory interpretation reviewed de novo. *United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir.1993).

The United States Code provides that a district court may transfer a juvenile for adult prosecution if, among other prerequisites, the alleged act is a crime of violence, a particular controlled substance offense, or one of a number of certain weapons offenses. 18 U.S.C. § 5032. In *Mendez*, we held that "conspiracy to rob in violation of § 1951 [Hobbs Act robbery] 'by its nature, involves a substantial risk that physical force ... may be used in the course of committing the offense.'" 992 F.2d at 1491 (quoting 18 U.S.C. § 924(c)(3)(B)). We therefore determined that conspiracy to commit Hobbs Act robberies constituted a crime of violence. "[A]scribing an ordinary meaning to the words, a conspiracy to commit an act of violence is an act involving a 'substantial risk' of violence." *Id.* (quoting *United States v. Chimurenga*, 760 F.2d 400, 404 (2nd Cir. 1985)); *see also United States v. Doe*, 49 F.3d 859, 866 (2d Cir.1995) (concluding RICO conspiracy to commit robbery is a crime of violence within the meaning of the Juvenile Delinquency Act and noting that "the nature

of the conspiracy's substantive objective may provide an indication as to whether the conspiracy creates the substantial risk that physical force against the person or property of another may be used in the offense").

In the instant case, the RICO charge alleges, in part, a conspiracy to commit Hobbs Act robberies. The information filed against the juveniles specifically alleges that the gang members "used, attempted to use, and conspired to use robbery, which affected interstate commerce." Therefore, because a RICO conspiracy to commit Hobbs Act robberies is a crime of violence, the district court did not err in transferring juvenile N.P.

### IV. Federal Jurisdiction Over Indians Is Not Limited to Crimes Enumerated in the Indian Major Crimes Act, 18 U.S.C. § 1153.

■ Juvenile M.A.C. argues that the district court lacked subject matter jurisdiction over the RICO charge against him because he contends that federal jurisdiction over criminal matters that occur between Indians in Indian country extends only to those crimes enumerated in the Indian Major Crimes Act, 18 U.S.C. § 1153.[3] We reject this contention.

■ We recently rejected a virtually identical argument in *United States v. Begay*, 42 F.3d 486, 497–500 (9th Cir.1994). In *Begay*, Indian defendants made the same argument with regard to conspiracy, as defined in 18 U.S.C. § 371. We rejected this argument, stating

[o]ur reading of §§ 1152 and 1153 leads us to reject Appellants' contention that Indians may not be charged for *any* criminal conduct beyond those crimes enumerated in § 1153.... [T]he [Indian] Major Crimes Act[ ] deals only with the applica-

---

**3.** The Indian Major Crimes Act, 18 U.S.C. § 1153, provides in part:

Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, maiming, a felony under Chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily in-

jury (as defined in section 1365 of this title), an assault against an individual who has not attained the age of 16 years, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

tion of federal enclave law to Indians and has no bearing on federal laws of nationwide applicability that make actions criminal wherever committed.

*Id.* at 498 (quoting *United States v. Top Sky,* 547 F.2d 483, 484 (9th Cir.1976) (Bald Eagle Protection Act, a law of general applicability throughout the United States, applies to Indians even though conduct the Act proscribes is not an enumerated offense under § 1153)). Moreover, we have previously held that RICO applies to Indians on their reservations. *See United States v. Farris,* 624 F.2d 890, 893–94 (9th Cir.1980) (holding that 18 U.S.C. § 1955 applies to Indians' on-reservation gambling activities). Thus, the district court had subject matter jurisdiction over M.A.C.'s RICO charge.

## CONCLUSION

The district court did not err in concluding that the Government need only prove that Defendants' predicate acts have a de minimis effect on interstate commerce to establish jurisdiction in a RICO prosecution. Further, because a RICO conspiracy to commit Hobbs Act robberies is a crime of violence, the district court did not err in transferring juvenile N.P. Finally, the district court had subject matter jurisdiction over juvenile M.A.C.'s RICO charge, even though RICO is not one of the enumerated crimes under the Indian Major Crimes Act. Therefore, we affirm the district court's orders transferring the juveniles for prosecution as adults.

AFFIRMED.