# UNITED STATES *v.* ROBERTSON

No. 94–251.   Argued February 27, 1995—Decided May 1, 1995

*Miguel A. Estrada* argued the cause for the United States. With him on the briefs were *Solicitor General Days, Assistant Attorney General Harris,* and *Michael R. Dreeben,* Acting Deputy Solicitor General.

*Glenn Stewart Warren,* by appointment of the Court, 513 U. S. 985, argued the cause and filed a brief for respondent.*

---

*\*Jon May* and *Ephraim Margolin* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

PER CURIAM.

Respondent, Juan Paul Robertson, was charged with various narcotics offenses, and with violating § 1962(a) of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U. S. C. § 1961 *et seq.* (1988 ed. and Supp. V), by investing the proceeds of those unlawful activities in the "acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." § 1962(a). He was convicted on some of the narcotics counts, and on the RICO count by reason of his investment in a certain gold mine. The United States Court of Appeals for the Ninth Circuit reversed the RICO conviction on the ground that the Government had failed to introduce sufficient evidence proving that the gold mine was "engaged in or affect[ed] interstate commerce." 15 F. 3d 862, 868 (1994). We granted the United States' petition for certiorari. 513 U. S. 945 (1994).

The facts relevant to the "engaged in or affecting interstate commerce" issue were as follows: Some time in 1985, Robertson entered into a partnership agreement with another man, whereby he agreed to finance a gold mining operation in Alaska. In fulfillment of this obligation, Robertson, who resided in Arizona, made a cash payment of $125,000 for placer gold mining claims near Fairbanks. He paid approximately $100,000 (in cash) for mining equipment and supplies, some of which were purchased in Los Angeles and transported to Alaska for use in the mine. Robertson also hired and paid the expenses for seven out-of-state employees to travel to Alaska to work in the mine. The partnership dissolved during the first mining season, but Robertson continued to operate the mine through 1987 as a sole proprietorship. He again hired a number of employees from outside Alaska to work in the mine. During its operating life, the mine produced between $200,000 and $290,000 worth of gold, most of which was sold to refiners within Alaska, although

Robertson personally transported approximately $30,000 worth of gold out of the State.

Most of the parties' arguments, here and in the Ninth Circuit, were addressed to the question whether the activities of the gold mine "affected" interstate commerce. We have concluded we do not have to consider that point. The "affecting commerce" test was developed in our jurisprudence to define the extent of Congress' power over purely *intra*state commercial activities that nonetheless have substantial *inter*state effects. See, *e. g.,* *Wickard* v. *Filburn*, 317 U. S. 111 (1942). The proof at Robertson's trial, however, focused largely on the *inter*state activities of Robertson's mine. For example, the Government proved that Robertson purchased at least $100,000 worth of equipment and supplies for use in the mine. Contrary to the Court of Appeals' suggestion, all of those items were not purchased locally ("drawn generally from the stream of interstate commerce," 15 F. 3d, at 869 (internal quotation marks omitted)); the Government proved that some of them were purchased in California and transported to Alaska for use in the mine's operations. Cf. *United States* v. *American Building Maintenance Industries*, 422 U. S. 271, 285 (1975) (allegation that company had made *local* purchases of equipment and supplies that were merely *manufactured* out of state was insufficient to show that company was "engaged in commerce" within the meaning of § 7 of the Clayton Act). The Government also proved that, on more than one occasion, Robertson sought workers from out of state and brought them to Alaska to work in the mine. Cf. *id.,* at 274. Furthermore, Robertson, the mine's sole proprietor, took $30,000 worth of gold, or 15% of the mine's total output, with him out of the State.

Whether or not these activities met (and whether or not, to bring the gold mine within the "affecting commerce" provision of RICO, they would *have* to meet) the requirement of substantially affecting interstate commerce, they assuredly

brought the gold mine within § 1962(a)'s alternative criterion of "any enterprise . . . engaged in . . . interstate or foreign commerce." As we said in *American Building Maintenance,* a corporation is generally "engaged 'in commerce'" when it is itself "directly engaged in the production, distribution, or acquisition of goods or services in interstate commerce." *Id.,* at 283. See also *Gulf Oil Corp.* v. *Copp Paving Co.,* 419 U. S. 186, 195 (1974).

The judgment of the Court of Appeals is

*Reversed.*