**UNITED STATES of America, Plaintiff,**

v.

**Larry G. WRIGHT, Defendant.**

No. 8:96CR–145.

United States District Court,
D. Nebraska.

May 2, 1997.

Mary H. Buckley, Assistant Federal Public Defender, Omaha, NE, for Defendant.

Michael P. Norris, Assistant U.S. Attorney, Omaha, NE, for Plaintiff.

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

Before the court is the "Motion To Dismiss" (filing no. 13 amended by filing no. 14) filed by the defendant, Larry G. Wright, who requests dismissal of the indictment (filing no. 1) against him because 18 U.S.C. § 2262(a)(1) is unconstitutional and, therefore, the court lacks subject matter jurisdiction in a prosecution based on an unconstitutional statute. Also before the court is filing no. 17, the "Report and Recommendation" of Magistrate Judge Thomas D. Thalken who recommends dismissal of the indictment because under the circumstances, Congress enacted 18 U.S.C. § 2262(a)(1) without the requisite basis of the Commerce Clause. See *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (the Gun–Free Zones Act of 1990 neither regulated a commercial activity nor contained a requirement that the prohibited possession of a firearm was connected to interstate commerce). The government objects to Magistrate Judge Thalken's report and recommendation. See filing no. 18.

In view of the government's objections to Magistrate Judge Thalken's report and recommendation (filing no. 17), this court, pursuant to 28 U.S.C. § 636(b)(1)(B) and NELR 72.4; has conducted a de novo review of the report and recommendation and the record in this matter, including a review of the hearing conducted by Magistrate Judge Thalken on February 13, 1997 (filing no. 19).

## ANALYSIS

In a three-count indictment, Wright is charged with separate violations of 18 U.S.C. § 2262(a)(1), namely, Wright, with the intent to violate a state court protection order concerning Michelle Lempka, traveled from Nebraska to Iowa where he entered Lempka's premises; later threw a brick through the window of Lempka's residence; and, finally, followed Lempka on Interstate 80 from Oma-

**1308**

ha, Nebraska to Council Bluffs, Iowa. 18 U.S.C. § 2262(a)(1) states:

(a) Offenses

(1) Crossing a State line—A person who travels across a state line or enters or leaves Indian country with the intent to engage in conduct that—

(A)(i) violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued; or

(ii) would violate this subparagraph if the conduct occurred in the jurisdiction in which the order was issued; and

(B) subsequently engages in such conduct, shall be punished as provided in subsection (b).

Magistrate Judge Thalken concluded that § 2262(a)(1) exceeds Congress' legislative authority based on the Commerce Clause and that, therefore, § 2262(a)(a) is unconstitutional. See U.S. Const., Art. I, § 8, cl. 3 ("Commerce Clause"). After a de novo review of Magistrate Judge Thalken's thorough opinion which is the product of extensive research pertaining to all aspects of 18 U.S.C. § 2262(a)(1), the court finds and concludes that Magistrate Judge Thalken correctly analyzed § 2262(a)(1) under the requirements of *Lopez*. Consequently, the court adopts Magistrate Judge Thalken's report and recommendation in its entirety.

■■■ The court has considered the government's argument that "crossing a state line," as required by § 2262(a)(1), is equivalent to "interstate commerce." However, while crossing a state line may be activity that is "interstate," the government has failed to present any statutory language, legislative history, or other authority to support its assertion that "crossing a state line" constitutes interstate commerce subject to regulation by Congress.[1] An interstate movement does not necessarily involve or

otherwise have an impact or effect on interstate commerce, an indispensable and fundamental requirement for the constitutionality of legislation such as 18 U.S.C. § 2262(a)(1) and a jurisdictional element for violation of the statute under examination in this action. Additionally, Magistrate Judge Thalken observed that there is a paucity of legislative history surrounding the enactment of § 2262(a)(1). Consequently, Congress' failure to include "interstate commerce" as an element of the crime specified in 18 U.S.C. § 2262(a)(1) renders the statute unconstitutional in view of *Lopez* and the absence of a possible explanation in the rather limited legislative history regarding the "commerce" nexus necessary for the constitutional enactment of the legislation which is the basis of the present prosecution of Wright.

The court recognizes the undeniable gravity of domestic violence as a serious and widespread problem throughout the United States and that Congress, in passing the Violence Against Women Act, attempted to address that problem. However, in the absence of the foundation afforded by Commerce Clause, 18 U.S.C. § 2262(a)(1) is federal criminalization of a matter that is constitutionally the subject of state legislation.

> The statute before us upsets the federal balance to a degree that renders it an unconstitutional assertion of the commerce power, and our intervention is required.... [U]nlike the earlier cases to come before the Court here neither the actors nor their conduct have a commercial character, and neither the purposes nor the design of the same statute have an evident commercial nexus.... The statute now before us forecloses the States from experimenting and exercising their own judgment in an area to which States lay claim by right of history and expertise, and it does so by regulating an activity beyond the realm of commerce in the ordinary and usual sense of that term.

1. The court has reviewed the decision in *United States v. Gluzman*, 953 F.Supp. 84 (S.D.N.Y. 1997). The court in *Gluzman* concluded that 18 U.S.C. § 2261 was constitutionally enacted pursuant to Congress' power under the Commerce Clause and, consequently, declined to dismiss the indictment against Gluzman. However, this court disagrees with the analysis found in *Gluzman* and concurs with Magistrate Judge Thalken and the reasons expressed in his report and recommendation regarding rejection of *Gluzman*.

*Lopez,* 514 U.S. at 580–83, 115 S.Ct. at 1640–1641 (concurring opinion of Justices Kennedy and O'Connor). Also, as noted by Magistrate Judge Thalken and this court, 18 U.S.C. § 2262(a)(1) "is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Lopez,* 514 U.S. at 561, 115 S.Ct. at 1630–1631. Because this court is bound by the United States Constitution and the decision of the United States Supreme Court in *Lopez,* this court, in accordance with *Lopez,* must conclude that § 2262(a)(1) is invalid because the subject statute is legislation beyond Congress' power under the Commerce Clause and, therefore, is an unconstitutional basis for the prosecution of Wright in this action.

THEREFORE, IT IS ORDERED:

(1) That filing no. 17, the "Report and Recommendation" of Magistrate Judge Thomas D. Thalken, is adopted in its entirety;

(2) That filing no. 18, the "Objection" to Magistrate Judge Thalken's report and recommendation, filed by the United States of America, is overruled;

(3) That filing no. 13, as amended by filing no. 14, is granted; and

(4) That the Indictment (filing no. 1) in this action against the defendant, Larry G. Wright, is dismissed.

## REPORT AND RECOMMENDATION

THALKEN, United States Magistrate Judge.

This matter is before the court on the defendant's motion to dismiss (Filing No. 13) as amended (Filing No. 14). The defendant, Larry G. Wright (Wright), is charged in a three-count indictment (Filing No. 1) with three separate violations of 18 U.S.C. § 2262(a)(1). Wright argues that 18 U.S.C. § 2262(a)(1) is unconstitutional under the rationale of *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and that this court therefore lacks subject matter jurisdiction over the case. Wright has submitted a brief in support of his amended motion to dismiss (Filing No. 14),

but the United States has elected not to submit a brief in opposition. The court heard oral argument from the parties on February 13, 1997. Appearing on behalf of the defendant was Mary H. Buckley, Assistant Federal Public Defender for the District of Nebraska. Appearing on behalf of the United States was Michael P. Norris, Assistant United States Attorney for the District of Nebraska.

## BACKGROUND

Wright was indicted in the District of Nebraska on October 24, 1996 (Filing No. 1) for three alleged violations of 18 U.S.C. § 2262(a)(1). A protection order was allegedly issued by the District Court of Lancaster County, Nebraska in November of 1995 which prohibited Wright "from harming, harassing or coming near Michelle L. Lempka" (Lempka). Filing No. 1 at 1 and 2. While this protection order was in effect, Wright was alleged to have violated its terms on three separate occasions in violation of 18 U.S.C. § 2262(a)(1).

Specifically, the indictment (Filing No. 1) alleges the following violations of 18 U.S.C. § 2262(a)(1):

1) On or about May 23, 1996, Wright traveled from Omaha, Nebraska to Lempka's residence at 218 South 28th Street in Council Bluffs, Iowa and entered onto the premises in violation of the Lancaster County protection order.

2) On or about June 29, 1996, Wright traveled from Omaha, Nebraska to Lempka's residence at 218 South 28th Street in Council Bluffs, Iowa and threw a brick through her window in violation of the Lancaster County protection order.

3) On or about July 7, 1996, Wright followed Lempka from Omaha, Nebraska to Council Bluffs, Iowa on Interstate 80 in violation of the Lancaster County protection order.

*See* Filing No. 1. Wright was arraigned on the indictment on December 9, 1996 and he pled not guilty to the charges contained in the indictment.

## ANALYSIS

"A Motion for the dismissal of a Count in an Indictment may be brought at any time pursuant to Rule 12(b)(2), Federal Rules of Criminal Procedure." *United States v. Finn,* 919 F.Supp. 1305, 1343 (D.Minn.1995). Wright moves for the dismissal of the indictment (Filing No. 1) in the instant case by asserting that 18 U.S.C. § 2262(a)(1) is an unconstitutional exercise of congressional power under the Commerce Clause of Article I, Section 8, of the United States Constitution as well as the Tenth Amendment to the United States Constitution. Specifically, Wright argues that "the activity the legislation attempts to reach does not substantially affect interstate commerce as required by the doctrine enunciated in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626[sic] (1995)." Filing No. 13 at ¶ 5.

The United States counters that 18 U.S.C. § 2262(a)(1) is distinguishable from the statute at issue in *Lopez* insofar as § 2262(a)(1) requires the defendant to travel interstate. The United States further asserts that there is no substantive difference between traveling interstate and traveling in interstate commerce. The United States has conceded that the only basis for the constitutionality of 18 U.S.C. § 2262(a)(1) is through the power of Congress to regulate interstate commerce.

Both parties assert that the paucity of caselaw on 18 U.S.C. § 2262(a)(1) is supportive of their respective positions. The United States argues that the fact that this statute has not been attacked in a published decision for over two years is indicative of the strength of the law. Wright counters by stating that the fact that there is only one published decision of a prosecution under 18 U.S.C. § 2262(a)(1) indicates the relative weakness of the law. *See United States v. Casciano,* 927 F.Supp. 54 (N.D.N.Y.1996) (constitutionality of § 2262(a)(1) under the Commerce Clause not addressed by the court). The court is impressed with neither of these novel methods of "constitutional interpretation" and will accordingly proceed under a more traditional mode of analysis.

President Clinton signed the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. 103–322, into law on September 13, 1994. Contained therein were, *inter alia,* two new criminal provisions from the Violence Against Women Act (VAWA): 1) interstate domestic violence (18 U.S.C. § 2261) and 2) interstate violation of protection order (18 U.S.C. § 2262). Wright is specifically charged under subsection (a)(1) of § 2262, which states:

> Crossing a State line.—A person who travels across a State line or enters or leaves Indian country with the intent to engage in conduct that—
>
> (A)(i) violates the portion of a protection order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued; or
>
> (ii) would violate subparagraph (A) if the conduct occurred in the jurisdiction in which the order was issued; and
>
> (B) subsequently engages in such conduct, shall be punished as provided in subsection (b).

18 U.S.C. § 2262(a)(1).[1]

The resolution of the issue before the court requires a careful analysis of the scope of congressional power (following the landmark holding of *Lopez* ) insofar as it relates to the Commerce Clause. As the majority opinion of *Lopez* contains a meticulous outline of the United States Supreme Court's Commerce Clause jurisprudence, the court will not belabor the record with another history herein.

*Lopez* held that the Gun–Free School Zones Act of 1990, as codified by 18 U.S.C. § 922(q), "exceed[ed] the authority of Congress '[t]o regulate Commerce . . . among the several States. . . .' " *Lopez,* 514 U.S. at 551, 115 S.Ct. at 1626, quoting U.S. Const. art. I, § 8, cl. 3. This was the first rejection of a federal statute as exceeding the scope of the interstate commerce power in sixty years. *See* Stephen R. McAllister, *Lopez Has Some Merit,* 5 Kan. J.L. & Pub. Pol'y 9, 9 (1996).

---

**1.** As the constitutionality of §§ 2261(a)(1), 2261(a)(2), and 2262(a)(2) are not currently at issue, the court will specifically limit its analysis to § 2262(a)(1).

The Commerce Clause reaches, in the main, three categories of problems. First, the use of channels of interstate or foreign commerce which Congress deems are being misused, as, for example, the shipment of stolen goods (18 U.S.C. §§ 2312–2315) or of persons who have been kidnaped (18 U.S.C. § 1201). Second, protection of the instrumentalities of interstate commerce, as, for example, the destruction of an aircraft (18 U.S.C. § 32), or persons or things in commerce, as, for example, thefts from interstate shipments (18 U.S.C. § 659). Third, those activities affecting commerce. *Perez v. United States,* 402 U.S. 146, 150, 91 S.Ct. 1357, 1359, 28 L.Ed.2d 686 (1971).

This case clearly does not implicate the second category · of permissible legislation and the court will therefore concentrate its efforts on discussing the first and third categories of commerce legislation.[2] Under the first category, "Congress may regulate the use of the channels of interstate commerce." *Lopez,* 514 U.S. at 558, 115 S.Ct. at 1629, citing *United States v. Darby,* 312 U.S. 100, 113–15, 61 S.Ct. 451, 457, 85 L.Ed. 609 (1941). Additionally, pursuant to the third category, "[w]here economic activity *substantially affects* interstate commerce, legislation regulating that activity will be sustained." *Lopez,* 514 U.S. at 560, 115 S.Ct. at 1630 (emphasis added).

The court has located one decision, *United States v. Gluzman,* 953 F.Supp. 84 (S.D.N.Y. 1997), which has recently ruled upon the constitutionality of one of the federal criminal provisions included in VAWA. Although *Gluzman* is certainly not binding upon this court, the case has been carefully analyzed for whatever persuasive effect it may have. Having completed that analysis, the court

concludes that District Judge Parker has misconstrued Congress' power to legislate pursuant to the Commerce Clause, as limited by *Lopez.*[3]

Judge Parker, in *Gluzman,* examined the legislative history of VAWA and noted the following:

> Congress, in enacting section 2261, alluded . to the substantial toll of domestic violence on the physical and economic welfare of individuals directly affected by such violence as well as public generally. See S.Rep. No. 103–138, at 41. Although gender-based violence, particularly when it is targeted against women, was clearly of primary concern to Congress, it was not the exclusive motive for the VAWA in its entirety. As previously noted, when addressing section 2261, the Committee considered, in nongender specific terms, "the health care, criminal justice, and other social costs of domestic violence," S.Rep. No. 103–138, at 41, and crafted what it believed to be an "appropriate response to the problem[s] of domestic violence which, because of their interstate nature, transcend the abilities of State law enforcement agencies." S.Rep. No. 103–138, at 62.

*Gluzman,* 953 F.Supp. at 87–88. Judge Parker therefore concluded that Congress had a rational basis for enacting 18 U.S.C. § 2261 pursuant to the interstate commerce power. This conclusion, however, ignored the express rejection of such a "costs of crime" reasoning by the *Lopez* Court. *See Lopez,* 514 U.S. at 563–65, 115 S.Ct. at 1632.

The legislative history underlying VAWA concentrates almost exclusively upon the problems of domestic violence and the consti-

---

**2.** It is unclear whether or not the court should be examining the third category of permissible Commerce Clause legislation in light of *United States v. Robertson,* 514 U.S. 669, 115 S.Ct. 1732, 131 L.Ed.2d 714 (1995), decided a mere five days after *Lopez.* The *Robertson* Court, in a unanimous *per curiam* opinion, noted that "[t]he 'affecting commerce' test was developed in our jurisprudence to define the extent of Congress's power over purely intrastate commercial activities that nonetheless have substantial interstate effects." *Robertson,* 514 U.S. at 671, 115 S.Ct. at 1733. At least one court has noted that *Robertson* stands for the proposition that the " 'effects'

test has no role outside of cases involving intrastate activities that are regulated because of their substantial effects upon interstate commerce." *United States v. Bishop,* 66 F.3d 569, 588 n. 29 (3d Cir.1995). Nevertheless, out of an abundance of caution, the court will address the applicability of the third category to the instant dispute.

**3.** It should be noted that Gluzman involved an analysis of 18 U.S.C. § 2261 (interstate domestic violence) and not 18 U.S.C. § 2262 (interstate violation of protection order).

tutionality of the civil rights remedy provision of VAWA's Title III (42 U.S.C. § 13981).[4] The issue currently before the court, however, is considerably more narrow; I am only called upon to decide the constitutionality of the criminalization of the interstate violation of protection orders. Although the legislative history regarding the effects of domestic violence on our society provides a convenient starting point for the court, it does not speak to the specific issue at hand, that is, whether or not the interstate violation of protection orders is within Congress' power to legislate under the first and/or third categories of interstate commerce regulation.

There is very little in the legislative history of VAWA regarding the interstate violation of protection orders. Other than generic recitations of the proposed language of 18 U.S.C. § 2262, the court has found few references in the voluminous legislative history upon which to ground a basis for passage of the statute. First, it was noted that:

> [T]he Federal Government plays an important role by closing loopholes created by the division of criminal law responsibilities among the States. Title II fills an existing gap by creating Federal penalties for abusers who cross state lines to continue abuse and by making protective court orders issued in one State valid in the 49 others.

S.Rep. No. 101–545 at 39 (1990). Additionally, the court found the following reference:

> The committee believes these actions to constitute an appropriate response to the problem[s] of domestic violence which, because of their interstate nature, transcend the abilities of State law enforcement agencies. The committee's legislation does not constitute an "overfederalization" of crimes. Under title 18 of the United States Code, there are provisions that make it a crime to cross a State line with falsely made dentures or with a cow. Thus, it is not a radical expansion of the

law to require one State to enforce the "stay-away" order of another.

S.Rep. No. 103–138 at 62 (1993) (footnote omitted).

Although not really pertinent, the court notes that there is a large analytical leap between crossing state lines with *things* in interstate commerce (such as falsely made dentures or cattle), and simply traveling across state lines. Both of the crimes noted in S.Rep. No. 103–138 would be constitutional under the second category of permissible legislation pursuant to the Commerce Clause which is not applicable to 18 U.S.C. § 2262(a).

As the court was unable to find a link between the interstate violation of protection orders and interstate commerce in the legislative history of VAWA, an examination of relevant congressional hearing testimony was also conducted. Most of the references noted that there is an inherent difficulty in our federal system of enforcing one state's protection orders in another state. *See Violent Crimes Against Women: Hearing Before the Senate Committee on the Judiciary*, 103rd Cong., 1st Sess. (1993) (statement of Colleen Walker, Lieutenant Governor from the State of Utah); *Crimes of Violence Motivated by Gender: Hearing Before the Subcommittee on Civil and Constitutional Rights of the House Committee on the Judiciary*, 103rd Cong., 1st Sess. (1993) (statement of Professor Cass R. Sunstein, University of Chicago); *Violence Against Women: Hearing Before the Subcommittee on Crime and Criminal Justice of the House Committee on the Judiciary*, 102nd Cong., 2nd Sess. (1992) (statement of the Honorable Joseph Biden, United States Senator from the State of Delaware); and *Violence Against Women: Victims of the System: Hearing Before the Senate Committee on the Judiciary on S. 15*, 102nd Cong., 1st Sess. (1991) (statements of a panel consisting of Professor Burt Neuborne, New York University School of Law and Professor

---

4. In the two decisions which have passed upon the constitutionality of VAWA's civil rights remedy provision, one has held the statute to be an unconstitutional exercise of congressional power pursuant to the Commerce Clause (*Brzonkala v. Virginia Polytechnic and State University*, 935

F.Supp. 779 (W.D.Va.1996)) and the other case ruled the statute to be constitutional (*Doe v. Doe*, 929 F.Supp. 608 (D.Conn.1996)). Both of those cases concentrated their analyses upon the third category of permissible regulation under the interstate commerce power.

Cass R. Sunstein, University of Chicago School of Law).

The lone reference to any other interstate implications of protection orders was found in a discussion of a model stalking code. *See Violence Against Women: Fighting the Fear: Hearing Before the Senate Committee on the Judiciary*, 103rd Cong., 1st Sess. at 33 (1993) (statement of Barbara Michaud) ("Victims who have the option to move out of State or even to visit others out of State often will not do that because they are afraid of leaving their court-ordered protection behind them."). Although there was no mention of protection order violations (interstate or otherwise), nor the economic effect thereof, this statement vaguely resembles the reasoning set forth in the rationale for upholding the Civil Rights Act of 1964 in *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964).

In *Lopez*, the government argued, citing *Heart of Atlanta Motel*, that "violent crime reduces the willingness of individuals to travel to areas of the country that are perceived to be unsafe." *Lopez*, 514 U.S. at 564, 115 S.Ct. at 1632. The government's arguments were rejected in *Lopez* and this court, although the government did not raise this particular argument in the instant case, is bound to reject them now. *See Id.* at 567–69, 115 S.Ct. at 1634. Furthermore, the isolated statement of Ms. Michaud, taken in the context of the overwhelming amount of material produced during the consideration of VAWA, is not nearly as persuasive as the voluminous testimony contained in the Civil Rights Act of 1964. Finally, no statements throughout the legislative history or congressional hearing testimony surrounding the enactment of VAWA could be found which linked any *economic* effect to the interstate violation of protection orders, nor to any effect of such violations upon interstate commerce.

There is concededly ample information regarding the societal and economic costs of domestic violence scattered throughout the legislative history of VAWA. However, notwithstanding *Lopez*'s rejection of these costs as a permissible basis upon which to ground a Commerce Clause statute, one may easily violate the terms of a protection order without committing an act of domestic violence.

In order for the court to accept the argument that the interstate violation of a protection order is an activity which "substantially affects" interstate commerce, the court would have to assume that *Robertson* has not foreclosed such an analysis with regard to interstate activities and infer the following:

1) the interstate violation of protection orders leads to domestic violence; and

2) domestic violence results in a less productive citizenry; and

3) a less productive citizenry has an adverse effect on the national economy.

Once again, however, the court must defer to the analysis of *Lopez* wherein the "national productivity" reasoning was also explicitly rejected. *See Lopez*, 514 U.S. at 567–68, 115 S.Ct. at 1634 ("To uphold the Government's contentions here, we would have to pile inference upon inference in a manner that would bid fair to convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States.... This we are unwilling to do.").

Briefly returning to the *Gluzman* decision, the court notes that Judge Parker enumerated various other federal criminal statutes purportedly similar to 18 U.S.C. § 2261 which had been upheld as constitutional. Interestingly, every statute noted in *Gluzman* contained an express requirement that a person or an article actually move in interstate *commerce*. Attempting to use those statutes as some sort of persuasive authority for upholding the constitutionality of the federal criminal provisions in VAWA is ineffectual.

The criminal statutes created by VAWA do not contain either an implicit or explicit requirement that any person or thing actually move in interstate commerce. Indeed, no mention of commerce or economic activity is ever made in either § 2261 or § 2262. Rather, those statutes simply criminalize domestic violence or the violation of a protection order when such conduct involves "[a] person who travels across a State line" or causes "a spouse or intimate partner to cross a State

line ..." *See* 18 U.S.C. §§ 2261–2262.[5] There are many ways to cross state lines without moving in the channels of interstate commerce and the court is extremely concerned about the lack of a requirement that the United States prove the involvement of interstate commerce when prosecuting a violation of 18 U.S.C. § 2262(a)(1). Accordingly, the court does not find the reasoning of *Gluzman* to be helpful.

The court has also carefully reviewed recent Eighth Circuit caselaw as it pertains to other criminal statutes attacked by a *Lopez*-challenge and has found those cases to be distinguishable from the instant dispute. Most of the post–*Lopez* Eighth Circuit cases have dealt with statutes expressly containing interstate commerce jurisdictional requirements. *See, e.g., United States v. Robinson,* 62 F.3d 234 (8th Cir.1995) (holding the carjacking statute, 18 U.S.C. § 2119, constitutional); *United States v. Rankin,* 64 F.3d 338 (8th Cir.1995) (holding the felon in possession of a firearm statute, 18 U.S.C. § 922(g)(1), constitutional); *United States v. Brown,* 72 F.3d 96 (8th Cir.1995) (holding the use of a firearm in conjunction with drug trafficking statute, 18 U.S.C. 924(c)(1), constitutional); *United States v. Miller,* 74 F.3d 159 (8th Cir.1996) (holding the theft from a firearms dealer statute, 18 U.S.C. § 922(u), constitutional); and *United States v. McMasters,* 90 F.3d 1394 (8th Cir.1996) (holding the conspiracy to commit arson in violation of 18 U.S.C. § 844(i) statute, 18 U.S.C. § 371, constitutional).

Of the few cases involving statutes without an express interstate commerce jurisdictional requirement, the Eighth Circuit has had to find either that the business and/or persons to be protected by the criminal statute were actually *in* interstate commerce (*see United States v. Dinwiddie,* 76 F.3d 913 (8th Cir. 1996) (upholding the constitutionality of the Freedom of Access to Clinic Entrances statute, 18 U.S.C. § 248)), or that the criminal

statute was " 'an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.' " *United States v. Monteleone,* 77 F.3d 1086, 1092 (8th Cir.1996) (holding the disposal of a firearm to a convicted felon statute, 18 U.S.C. § 922(d), constitutional), quoting *Lopez,* 514 U.S. at 561–63, 115 S.Ct. at 1631. None of those cases involved a situation wherein, as with the instant dispute, there was a lack of an explicit interstate commerce jurisdictional element *and* the involvement of a non-economic activity.

Finally, the court is little persuaded by the argument that since states are unable to enforce their protection orders out-of-state, the Federal Government must therefore intervene to enforce those orders. As noted in *Lopez:*

> The Constitution creates a Federal Government of enumerated powers. *See* U.S. Const., Art. I, § 8. As James Madison wrote, "[t]he powers delegated by the proposed Constitution to the federal government are few and defined. Those which are to remain in the State governments are numerous and indefinite." The Federalist No. 45, pp. 292–293 (C. Rossiter ed.1961). This constitutionally mandated division of authority "was adopted by the Framers to ensure protection of our fundamental liberties." *Gregory v. Ashcroft,* 501 U.S. 452, 458, 111 S.Ct. 2395, 2400, 115 L.Ed.2d 410 (1991) (internal quotation marks omitted).

*Lopez,* 514 U.S. at 552, 115 S.Ct. at 1626.

■ Nowhere in the enumerated powers set forth in the Constitution is there a reference to a plenary police power that would authorize legislation on the ground that the states are simply unable to handle the problem themselves. On the contrary, The Tenth Amendment to the Constitution specifically provides that "[t]he powers not delegated to the United States by the Constitution, nor

---

**5.** Interestingly, the proposed language of 18 U.S.C. § 2262(a) was changed sometime between October 19, 1990 and October 29, 1991 from "[a]ny person who travels or causes another (including the intended victim) to travel across State lines or in interstate commerce ..." (see S.Rep. No. 101–545 at ) to "[a]ny person against

whom a valid protection order has been entered who travels across State lines ..." (see S.Rep. No. 102–197 at 17). The court has been unable to discern Congress' rationale for dropping the "interstate commerce" language, as opposed to the "crossing State lines" language, from proposed § 2262(a).

prohibited by it to the States, are reserved to the States respectively, or to the people." The court accordingly finds the statements in the legislative history of VAWA regarding the inability of states to enforce protection orders outside the borders of the issuing state to be insufficient to uphold the constitutionality of 18 U.S.C. § 2262(a)(1). Also, whether or not states can actually enforce the protection orders of other states, acts of domestic violence are independently prohibited as state law crimes.

In sum, 18 U.S.C. § 2262(a)(1) "is a criminal statute that by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms." *Lopez*, 514 U.S. at 561, 115 S.Ct. at 1630–31. Furthermore, as in the statute analyzed in *Lopez*, § 2262(a)(1) "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the [activity] in question affects interstate commerce." *Id.* at 561, 115 S.Ct. at 1631. As noted above, "to the extent that congressional findings would enable us to evaluate the legislative judgment that the activity in question substantially affected interstate commerce, even though no such substantial effect was visible to the naked eye, they are lacking here." *Id.* at 563, 115 S.Ct. at 1632. Accordingly, the court concludes that 18 U.S.C. § 2262(a)(1) exceeds Congress' power to legislate pursuant to the interstate commerce power and the defendant's motion to dismiss (Filing No. 14) should be granted as to all three counts of the indictment (Filing No. 1).[6]

Alternatively, even were the court to uphold the constitutionality of 18 U.S.C. § 2262(a)(1) on the basis of imputing a requirement that the prosecution prove movement in interstate commerce as opposed to the mere crossing of state lines, the first two counts of the indictment (Filing No. 1) should still be dismissed. Counts I and II of the indictment (Filing No. 1) allege that the de-

fendant "did travel from the State of Nebraska to the State of Iowa with the intent to engage in and subsequently did engage in conduct that violated a protection order ..." *Id.* at 1 and 2. Neither of those counts, however, contains any factual allegations regarding *how* the defendant's travel involved interstate commerce.

Count III, on the other hand, factually alleges that the defendant "followed Michelle Lempka on Interstate 80 in Omaha, Nebraska, to Council Bluffs, Iowa, in violation of the protection order ..." *Id.* at 2. As Interstate 80 can be considered to be a channel of interstate commerce, Count III could be factually sustained under a constitutional statute. As the court is not presented with a constitutional statute, however, this question need not be definitively answered.

## CONCLUSION

The court is aware that the horrors of domestic violence are all too prevalent in American society and that the above decision may be interpreted by some as another indication of indifference to the problems created by such abuse. However, the United States is a nation governed by the rule of law and the United States Government is one of limited, enumerated powers. Accordingly, I am bound by the limits of the Constitution of the United States and the decisions of our Supreme Court. Therefore,

IT IS RECOMMENDED to Judge Thomas M. Shanahan that:

The defendant's motion to dismiss (Filing No. 13) as amended (Filing No. 14) should be granted.

## ADMONITION

Pursuant to NELR 72.4 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure

---

**6.** The case for the constitutionality of the related criminal provisions of VAWA (i.e., §§ 2261(a)(1), 2261(a)(2), and 2262(a)(2)) may or may not be stronger than the case for § 2262(a)(1). For example, §§ 2261(a)(2) and 2262(a)(2) at least require causing "a spouse or intimate partner to cross a State line or to enter or leave Indian country ..." Also, the legislative history is unquestionably stronger for the domestic violence provisions of § 2261 than the protection order provisions of § 2262. Whether those other criminal provisions would withstand constitutional scrutiny, however, is not currently before the court.

to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be delivered to Judge Thomas M. Shanahan at the time of filing such objection. Failure to submit a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 21st day of March, 1997.