**UNITED STATES of America,**
**Plaintiff,**

v.

**Arthur Larry BOWENS, Defendant.**

**No. CR 99–40165 SBA.**

United States District Court,
N.D. California.

June 29, 2000.

Jonathan Schmidt, Assistant United States Attorney, U.S. Attorney's Office, Oakland, CA, for plaintiff.

Anne Flower Cumings, Assistant Federal Public Defender, Federal Public Defender's Office, Oakland, CA, for defendant.

## ORDER

ARMSTRONG, District Judge.

This matter comes before the Court on defendant's Motion to Dismiss for Lack of Jurisdiction [# 40–1]. Having read and considered the papers submitted by the parties and being fully informed, the Court hereby DENIES defendant's Motion to Dismiss.

### I. *BACKGROUND*

On July 6, 1999, a federal complaint was filed against defendant Arthur Larry Bowens alleging a violation of 18 U.S.C. § 922(g)(1)—Felon in Possession of Firearm or Ammunition. The complaint alleges the defendant possessed a firearm manufactured outside the state of California. A federal grand jury subsequently issued a one-count indictment charging defendant with a violation of § 922(g).

Defendant now moves to dismiss the indictment. He contends that the combination of three Supreme Court cases[1]— *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), *United States v. Morrison*, —— U.S. ——, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), and *Jones v. United States*, —— U.S. ——, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000)—renders the possession prong of § 922(g) unconstitutional. Defendant alleges this *Lopez* trilogy has silently overruled Ninth Circuit authority upholding the constitutionality of § 922(g).

### II. *STANDARD OF REVIEW*

 A court should invalidate an act of Congress "only upon a plain showing that Congress has exceeded its constitutional bounds." *Morrison*, 120 S.Ct. at 1748. This standard ensures "due respect for the decisions of a coordinate branch of Government." *Id.*

### III. *DISCUSSION*

Before addressing the merits of defendant's constitutional attack, an exploration of the current status of Ninth Circuit law on the constitutionality of the possession prong of § 922(g)[2] and a review of the *Lopez* trilogy proves necessary.

### A. Ninth Circuit Law Regarding § 922(g)

 Title 18, United States Code, Section 922(g) makes it unlawful for a felon to "possess in or affecting commerce ... any firearm." The jurisdictional requirement "in or affecting commerce" presently poses only a slight obstacle to prosecution. The Ninth Circuit applies the same standard that applied to one of § 922(g)'s predecessors, 18 U.S.C. § 1202(a). *United States v. Sherbondy*, 865 F.2d 996, 1000–1 (9th Cir.1988). The commerce element in § 1202(a) only required the prosecution to prove that the firearm had been in interstate commerce at some previous time. *Scarborough v. United States*, 431 U.S. 563, 575, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). The Supreme Court rested that conclusion on congressional intent. *See id.* at 569–77, 97 S.Ct. 1963. Because the Ninth Circuit extended *Scarborough*'s "minimal nexus" approach to § 922(g), the prosecution need only show that the firearm possesses "a past connection with commerce" in order to satisfy the jurisdictional requirement of § 922(g). *Sherbondy*, 865 F.2d at 1000–1. An adequate past connection exists when an individual possesses in California a gun manufactured in another state. *See id.*

Although often of central importance for statutory construction, congressional in-

---

**1.** In order to maintain consistency with defendant's papers, the Court will refer to *Lopez, Morrison*, and *Jones* as the "*Lopez* trilogy."

**2.** Title 18, United States Code, Section 922(g) also makes it unlawful to "ship or transport in interstate or foreign commerce" any firearm. That prohibition is not implicated in this motion nor in the Indictment filed July 22, 1999.

tent does not settle constitutional questions. Whether the commerce nexus inserted into § 922(g) is sufficient to survive judicial scrutiny under the interstate Commerce Clause ultimately is an issue requiring judicial rather than legislative resolution. *See United States v. Morrison,* ——U.S. ——, ——, 120 S.Ct. 1740, 1752, 146 L.Ed.2d 658 (2000). The Ninth Circuit addressed precisely that issue in *United States v. Hanna,* 55 F.3d 1456 (9th Cir. 1995).

■ Citing *Sherbondy, Hanna* rejected both a facial and as applied challenge to § 922(g)(1).[3] Significantly for our purposes, *Hanna* reached this conclusion after the Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). *Lopez,* discussed *infra,* affirmed a Court of Appeals' decision finding that 18 U.S.C. § 922(q), which made it unlawful to knowingly possess a firearm in a school zone, exceeded Congress' power to legislate under the Commerce Clause. *Lopez,* 514 U.S. at 552, 115 S.Ct. 1624. Touting § 922(g)'s jurisdictional element, which was absent from § 922(q), *Hanna* concluded that "[s]ection 922(g)'s requirement that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause." *Hanna,* 55 F.3d at 1462 n. 2.

*Hanna* accurately reflects the current state of Ninth Circuit law on the issue now before the Court. The Ninth Circuit has not yet addressed the implications, if any, of the Supreme Court's recent decisions in *Jones* and *Morrison* on the holding in *Hanna.* Thus, Ninth Circuit case law currently holds that the "minimal" nexus required by § 922(g) is sufficient to withstand an attack under the Commerce Clause.

**B. The Lopez Trilogy**

In light of the Ninth Circuit's consistent rejection of challenges to the constitutionality of § 922(g) and the absence of any Supreme Court authority holding § 922(g) unconstitutional, defendant's only viable line of attack is to maintain that recent Supreme Court precedent, by extension, has overruled the Ninth Circuit's holding in *Hanna.* Relying on the *Lopez* trilogy of *Lopez, Jones,* and *Morrison,* defendant adopts precisely such an attack. Before tracing defendant's argument, an intimate familiarity with each of these three cases proves necessary.

*1. Lopez*

In assessing whether § 922(q) constituted a valid exercise of Congress' Commerce Clause power, the Supreme Court outlined three categories of activity properly subject to Congress' regulation under the Commerce Clause: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "activities having a substantial relation to interstate commerce, ... i.e. those activities that **substantially** affect interstate

---

**3.** *Hanna* conflated the distinction between statutory construction and constitutional analysis. It rested its decision on *Scarborough* and *Sherbondy,* two cases, at least explicitly, dealing with statutory construction. Subsequent Ninth Circuit cases have invoked *Hanna* without addressing the imprecision in its approach. *See e.g. United States v. Miller,* 105 F.3d 552, 555 (9th Cir.1997); *United States v. Polanco,* 93 F.3d 555, 563 (9th Cir. 1996); *United States v. Nguyen,* 88 F.3d 812, 820 (9th Cir.1996); *United States v. Collins,* 61 F.3d 1379, 1383 (9th Cir.1995). Regardless of the apparent gap between *Hanna*'s

holding and the authority underpinning that holding, courts in this circuit have accepted the holding. Moreover, *Scarborough* followed *United States v. Bass,* 404 U.S. 336, 350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); which concluded, as a result of the serious constitutional questions that would arise from an alternative holding, that § 1202(a) required proof of "some interstate commerce nexus" in each case. Arguably implicit in *Bass* is the constitutional finding that a minimal nexus is sufficient to satisfy the Commerce Clause. *See United States v. Lewis,* 100 F.3d 49, 52 (7th Cir.1996).

commerce." *Lopez*, 514 U.S. at 558–9, 115 S.Ct. 1624 (emphasis added). The Court expeditiously concluded that the first two categories did not apply to § 922(q), noting as to the second category that Congress was not seeking to "protect" a "thing in interstate commerce" when it outlawed the knowing possession of firearms in a school zone.[4] *Id.* at 559, 115 S.Ct. 1624. The brunt of the Court's analysis focused on the third category.

Four factors formed the heart of the Court's analysis of whether the activity at issue in § 922(q) "substantially" affected interstate commerce. The Court first considered whether the criminal statute was "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated" and concluded that it was not. *Id.* at 560–1, 115 S.Ct. 1624. Second, the Court noted the absence of any express jurisdictional requirement in the statute that "would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561, 115 S.Ct. 1624. Third, the Court noted the absence of any legislative history regarding the effect of the firearm possession at issue on interstate commerce. *Id.* at 562, 115 S.Ct. 1624. Finally, the Court considered specific arguments allegedly showing the requisite substantial effect, including the substantial costs of violent crime, the reduction in interstate travel resulting from violent crime, and adverse consequences to the nation's economy resulting from the decreased productivity associated with the handicapped educational process caused by the presence of guns in schools.

The Court roundly rejected these "but for" arguments as potentially opening any activity to congressional regulation. *Id.* at 564, 115 S.Ct. 1624.

Finding that Congress' regulation of the possession of firearms in school zones did not fall within any of the three categories, the Court concluded that Congress exceeded its power in promulgating § 922(q).

### 2. *Morrison*

*Morrison* involved a constitutional challenge to 42 U.S.C. § 13981, which provided a federal civil remedy for the victims of gender-motivated violence. *Morrison*, 120 S.Ct. at 1745. The Supreme Court reiterated the three categories of activity recognized by *Lopez* as subject to Congress' regulation under the Commerce Clause and recited the four factors analyzed by *Lopez* under the third category. *Id.* at 1749–51. As with *Lopez*, the Court's focus centered on the third category—whether the regulated activity substantially affected interstate commerce.[5]

Unlike with § 922(q), the congressional history for § 13981 detailed explicit findings regarding the effect of gender-motivated violence on interstate commerce. *Id.* at 1752. For example, Congress found that gender-motivated violence deters potential victims from traveling interstate and diminishes national productivity. *Id.* Likening these findings to the "but for" method of reasoning rejected as unworkable in *Lopez*, the Court aggressively rebuffed any suggestion that Congress "may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.*

---

4. When discussing category two, the Supreme Court found that Congress holds the power to "regulate and protect" things in interstate commerce, but the Court's application of category two used only the word "protect." The opinion never directly addresses whether § 922(q) "regulates" a thing in interstate commerce. Regardless, the absence of a jurisdictional requirement in that provision prevented any blanket conclusion that the firearm in any given case even would be a "thing

in interstate commerce." Absent such assurance on the face of the statute, the Court's quick dismissal of category two as the basis for Congress' exercise of power is hardly surprising.

5. The petitioners did not even attempt to contend that the statute regulated either of the first two categories of activity. *Morrison*, 120 S.Ct. at 1749.

at 1752 and 1754. Such an approach would open to federal regulation all violent crime, thus obliterating the Constitution's distinction between federal and state power. *Id.* at 1753.

Finding that the petitioners had failed to demonstrate that gender-motivated violence substantially affected interstate commerce, the Court concluded that § 13981 exceeded Congress' authority under the Commerce Clause. *Id.* at 1754–55.

### 3. *Jones*

Approximately one week later, the Supreme Court walked the periphery of the Commerce Clause in its analysis of 18 U.S.C. § 844(i), which makes it unlawful to damage or destroy by fire or explosive "any ... property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." *Jones,* 120 S.Ct. at 1907 (internal quotations and citation omitted). The unanimous decision focused on whether "property used in interstate or foreign commerce" encompassed an owner-occupied private residence. *Id.* at 1908. Conducting a textual analysis of the statute, the Court concluded that "used in" requires that the property be actively employed for commercial purposes, not merely passively or previously connected to commerce. *Id.* at 1910. The Commerce Clause issues that would arise under *Lopez* if the statute applied to owner-occupied private residences "used" as collateral to secure a mortgage or in some other similarly passive, passing, or past way reinforced the Court's textual analysis. *Id.* at 1911–12.

### C. Application of *Lopez* Trilogy to Ninth Circuit Precedent

Defendant's burden is heavy. He must demonstrate that the *Lopez* trilogy overruled not only the reasoning but also the holding in *Hanna.* He attempts to shoulder this burden by advancing a four-step argument: (1) *Hanna* rested its conclusion that § 922(g) was constitutional on its finding that a "minimal nexus" was constitutionally sufficient pursuant to *Scarborough;* (2) the *Lopez* trilogy requires that activity must substantially affect interstate commerce for Congress to regulate such activity under the Commerce Clause; (3) the "minimal nexus" standard does not ensure a substantial effect; (4) therefore, the *Lopez* trilogy "silently overrule[s]" *Hanna.* (Reply at 4; *see also* Mot. at 21).

### 1. The *Lopez* Trilogy Does Not Disturb the Approach Suggested in *Pappadopoulos* to the Section 922(g) Possession Analysis

The second step of defendant's argument omits an essential detail. The "substantially affects" requirement arises in the context of the third *Lopez* category of activity subject to Congress' regulation under the Commerce Clause.[6] Thus, even if correct, defendant's four step argument only undermines *Hanna* and its progeny to the extent those cases rely on category three as the source of congressional authority.

Following *Lopez'* lead, the Ninth Circuit requires an exercise of congressional Commerce Clause Power to find a base in one of the three categories of activity subject to Congress' regulation. *See United States v. Pappadopoulos,* 64 F.3d 522, 525–

6. In insisting that activity must "substantially affect" commerce in order to fall within Congress' regulatory power under the Commerce Clause, defendant cites to *Morrison,* 120 S.Ct. at 1749–50, and *Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624. (Reply at 4). These two pinpoint cites refer to sections of the opinions addressing the third category of activity subject to congressional regulation. Defendant provides *no* authority, nor is the Court aware of any, for his implicit conclusion that activity regulated in categories one and two must "substantially affect" commerce. The Supreme Court has recognized that these three bases of congressional authority are "analytically distinct." *United States v. Pappadopoulos,* 64 F.3d 522, 526 (9th Cir.1995) (citing *United States v. Robertson,* 514 U.S. 669, 115 S.Ct. 1732, 131 L.Ed.2d 714 (1995) (per curiam)).

6 (9th Cir.1995). This Circuit strongly has suggested that § 922(g) regulates "things in commerce"—i.e. firearms crossing state lines—such that the statute constitutes a valid exercise of Congress' power to regulate activity falling within category two of the three categories identified in *Lopez. See United States v. Pappadopoulos,* 64 F.3d 522, 527 (9th Cir.1995). *Pappadopoulos* involved a pre-*Jones* constitutional challenge to the arson statute at issue in *Jones. Pappadopoulos,* 64 F.3d at 524. After specifying the three separate categories of activities subject to congressional regulation under the Commerce Clause, the court quickly dismissed the first two categories and engaged in an extended analysis of whether the destruction of a house that receives natural gas from outside the state (its only claimed relationship with interstate commerce) constituted a substantial effect on interstate commerce. *Id.* at 526. Holding that it does not, the court distinguished *Hanna* for its similarities with a category two activity.

*Pappadopoulos* determined that § 922 "can rationally be seen as regulating the interstate transportation of firearms and ammunition" and, therefore, as drawing support from Congress' power to regulate goods in interstate commerce. *Id.* at 527. In other words, unlike the arson statute, § 922 finds some roots in Congress' category two power.[7] *Pappadopoulos* found further support for this conclusion in *Hanna's* analysis of the as applied constitutional challenge raised in that case; *Hanna* spurned that challenge because the firearm at issue had previously moved in

interstate commerce and *not* because the firearm itself affected interstate commerce.[8] *Id.*

In distinguishing § 922(g) from the arson statute, *Pappadopoulos* confronted an even more difficult issue than the one now before the Court. Whereas *Jones* ultimately rested its decision on a textual analysis of the term "used" in the arson statute, albeit after expressing serious constitutional concerns with an expansive interpretation of that term, *Pappadopoulos* firmly resolved the constitutional question. The Ninth Circuit's express reinforcement of § 922(g) even after sustaining an as applied constitutional challenge to a federal criminal statute that, unlike § 922(q), has an explicit jurisdictional component, strongly indicates that the textual analysis in *Jones* and the accompanying implicit constitutional concerns would not upset this circuit's assessment of the constitutionality of § 922(g). Section 922(g) is a valid exercise of Congress' Commerce Clause authority to regulate category two activities.

To reiterate, the *Lopez* trilogy only even arguably overrules the constitutional premise allegedly implicit in *Scarborough's* "minimal nexus" construction of § 922(g)'s predecessor if the activity regulated in § 922(g) is category three. Coupling *Hanna's* analysis of the as applied challenge with *Pappadopoulos'* gloss on *Hanna,* the Ninth Circuit, in applying *Scarborough,* has strongly suggested that § 922(g) regulates category two activity. Under this approach, the constitutionality of § 922(g)'s possession prong, well-estab-

---

7. Further supporting this distinction between the arson and felon in possession statutes, the court observed: "[u]nlike a firearm . . . which can readily move in interstate commerce, a house has a particularly local rather than interstate character." *Pappadopoulos,* 64 F.3d at 527–8.

8. *Scarborough,* on which *Hanna* relied, provides additional indirect support that the possession prong of § 922(g) regulates category two activity. *Scarborough* concluded that Congress' intent was to have the jurisdictional element in § 922(g)'s predecessor require no

more than "the minimal nexus that the firearm have been, at some time, **in** interstate commerce." *Scarborough,* 431 U.S. at 575, 97 S.Ct. 1963. Thus, Congress apparently intended to regulate possession of a good "in" interstate commerce, although as discussed *infra* portions of the legislative history also suggest that Congress intended to regulate activity affecting interstate commerce. As here, the statutory language included both "in commerce" and "affecting commerce." *Id.* at 564, 97 S.Ct. 1963.

lished in this circuit, remains undisturbed by the *Lopez* trilogy.

Anticipating a possible finding that the possession prong of § 922(g) is a regulation of a good "in interstate commerce," defendant contends *Hanna* and *Pappadopoulos* conflict with other Ninth Circuit authority regarding whether an item is "in interstate commerce" forever merely because it once moved across state lines. (Mot. at 21–22). Ninth Circuit authority clearly holds that Congress possesses regulatory power over a firearm that has moved "at some time" in interstate commerce. *See United States v. Casterline,* 103 F.3d 76, 77 (9th Cir.1996) (internal quotation omitted) (citing *Hanna* ). In affirming this principle, *Casterline* rejected suggestions in *Lopez* about a temporal proximity requirement and in *Pappadopoulos* about the insufficiency of a one-time movement in interstate commerce. *Id.* In this circuit, a firearm's one-time movement in interstate commerce is a sufficient anchor to implicate congressional Commerce Clause powers.[9]

The alleged shifting in the constitutional sands effected by the *Lopez* trilogy leaves untouched the Ninth Circuit's § 922(g) possession prong analysis as suggested in *Pappadopoulos.*[10]

9. As a final argument, defendant in his reply brief contends that possessing a gun that crossed state lines long ago does not amount to possession "in or affecting commerce" as required by § 922(g). (Reply at 5:9–11). Defendant provides no support for this one-sentence **statutory construction** argument, which is not surprising. *Scarborough,* when construing the analogous language "possesses ... in commerce or affecting commerce" of 18 U.S.C. § 1202(a), determined that the possessed firearm need only have "at some time" traveled in interstate commerce to satisfy this language. *Scarborough,* 431 U.S. at 575, 97 S.Ct. 1963.

10. Defendant suggests dire jurisdictional consequences will stem from this approach since now "there is scarcely any item in any person's possession within this country that is not subject to regulation by Congress. Congress could regulate virtually any act of murder by enacting a statute that contained a

## 2. The Possession Prong of § 922(g) Is within Congressional Power to Regulate Category Three Activities

The "minimal nexus" envisioned in *Scarborough* is a sufficient anchor to implicate congressional power to regulate category three activities. Under this third category, Congress may regulate activities that substantially affect interstate commerce. *Lopez,* 514 U.S. at 558–9, 115 S.Ct. 1624. The presence of a jurisdictional component in a criminal statute is an important factor in assessing whether an activity affects commerce. *Id.* at 561–2, 115 S.Ct. 1624. Unlike the provisions struck in *Lopez* and *Morrison,* § 922(g) contains a jurisdictional element. In emphasizing the absence of a jurisdictional element to § 922(q), *Lopez* invoked § 922(g)'s predecessor, 18 U.S.C. § 1202(a), as an example of a statute containing a jurisdictional element "which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce."[11] *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624. Quoting this very language from *Lopez, Hanna* concluded that § 922(g)'s jurisdictional requirement and its accompanying case-by-case inquiry ensured its constitutionality in the post-*Lopez* world. *Hanna,* 55 F.3d at

jurisdictional element 'murder by an article in interstate commerce.' " (Mot. at 23:1–5). To the extent defendant's comments are accurate, the Ninth Circuit in *Hanna,* armed with the concerns articulated in *Lopez* regarding federal intrusion into traditionally state arenas, did not deem them sufficient to undermine the constitutionality of § 922(g)'s possession prong. Neither *Morrison* nor *Jones* suggest any reason for a change in the Ninth Circuit's approach.

11. A notable omission from this quotation is the word "substantial." *Lopez* did *not* hold that the mere presence of a jurisdictional element necessarily ensures a substantial effect in each case. *Morrison,* which shared *Lopez '* interest in the presence of a jurisdictional element, noted as to § 13981 that such an element would "lend support" to the assertion of a sufficient connection to interstate commerce. *Morrison,* 120 S.Ct. at 1751–2.

1462 n. 2.[12] By extension, *Morrison*, also involving a statute lacking a jurisdictional element, leaves *Hanna* untouched.[13]

*Jones* does not alter *Hanna*'s status. As already discussed, whereas *Pappadopoulos* explicitly shifted the "constitutional sands," *Jones* ultimately couched its holding as a statutory construction. In the aftermath of the constitutional holding in *Pappadopoulos*, the Ninth Circuit repeatedly adhered to the holding in *Hanna*. *See e.g. United States v. Polanco*, 93 F.3d 555, 563 (9th Cir.1996); *United States v. Nguyen*, 88 F.3d 812, 820 (9th Cir.1996); *United States v. Collins*, 61 F.3d 1379, 1383 (9th Cir.1995). If indeed *Hanna* and its progeny construe § 922(g) as validly regulating a category three activity (as opposed to a category two activity), that finding, as demonstrated by the Ninth Circuit's consistent approach post-*Pappadopoulos*, is not vulnerable to attack from the constitutional concerns only implicit in the holding in *Jones*.

### CONCLUSION

The Ninth Circuit has strongly suggested that § 922(g) is a valid exercise of congressional power to regulate category two activities. The *Lopez* trilogy in no way unsettles that approach. Even if Ninth Circuit authority is found to have construed § 922(g) as regulating category three activity only, the *Lopez* trilogy still

does not upset the constitutionality of the provision. Section 922(g)'s jurisdictional element has shielded it from constitutional attack even in the aftermath of *Lopez* and, particularly, of *Pappadopoulos*, which shifted the constitutional terrain more explicitly and, thus, more radically than did *Jones*.

For these reasons and the reasons discussed above, defendant's Motion to Dismiss for Lack of Jurisdiction is DENIED.

IT IS SO ORDERED.

---

12. Whereas the presence of a jurisdictional element counsels in favor of classifying the possession prong of § 922(g) as an authorized exercise of Congress' power to regulate category three activities, the legislative history of one of § 922(g)'s predecessors suggests Congress intended an arguably insufficient connection between firearm possession and interstate commerce. Senator Long urged Congress to find that "the possession of these weapons by the wrong kind of people is either a burden on commerce or a threat that affects the free flow of commerce." *Scarborough*, 431 U.S. at 572, 97 S.Ct. 1963 (citing 114 Cong.Rec. 13868 (1968)). This statement resonates with the discredited "cost of crime" and aggregate effect arguments advanced in *Lopez* and *Morrison*. *Hanna*, however, implicitly concluded that the presence

of a jurisdictional component trumped any countervailing concerns.

13. *Hanna* does not clarify whether, in its view, the presence of a jurisdictional element in § 922(g) thereby satisfies the "substantially affects" test or instead dispenses with the necessity of complying with that test altogether. The Seventh Circuit has concluded that § 922(g)(1), with a Supreme Court imprimatur stretching back to *Bass* and *Scarborough*, need not meet the "substantially affects" requirement under category three. *United States v. Wilson*, 159 F.3d 280, 286–7 (7th Cir.1998). The Court need not consider which tact the Ninth Circuit adopted since *Hanna*, whatever it means, remains viable in the wake of *Jones* for the reasons discussed *infra*.