**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank Jesus RODRIGUEZ, a.k.a. Laprada, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Jose Ramon Laprada–Trevino, a.k.a. Jose Pepe Laprada, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Pedro Hernandez, Defendant–Appellant.**

**United States of America, Plaintiff–Appellee,**

v.

**Roberta Hernandez, Defendant–Appellant.**

No. 99–30219, 99–30220, 99–30221, 99–30222, 99–30223, 99–30224, 99–30225.

DC No. CR–97–00124–1–JDS.

DC No. CR–97–00124–3–JDS.

DC No. CR–97–00124–4–JDS.

DC No. CR–97–00025–JDS.

DC No. CR–98–00120–JDS.

DC No. CR–98–00120–2–JDS.

DC No. CR–97–00124–5–JDS.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2001.

Decided Aug. 28, 2001.

Before NOONAN, TASHIMA, and TALLMAN, Circuit Judges.

## MEMORANDUM *

This appeal involves four defendants in three separate criminal cases: a marijuana conspiracy case (Marijuana Conspiracy Case), a money laundering case (Money Laundering Case), and a probation violation case (Probation Violation Case).

*Marijuana Conspiracy Case:* In October 1992, Pedro Hernandez and other conspirators agreed to contribute money to purchase marijuana in Arizona for distribution in Montana. Pedro Hernandez and others working for him transported marijuana supplied by Frank Jesus Rodriguez (Rodriguez) and Jose Ramon Laprada–Trevino (Laprada–Trevino) from Arizona to Montana. Conspirators used "stash houses" in Broadview and Columbus, Montana to operate the marijuana business. After Pedro Hernandez was arrested on June 13, 1993, conspirators continued to run the marijuana business while Pedro Hernandez was in prison, using three-way telephone calling to discuss business and wire transfers to send drug money.

During the same time period, Pedro Hernandez worked with Alfred Peterson (Peterson), who was an inmate of the Mon-

tana State Prison, to smuggle marijuana into the prison. Pedro Hernandez delivered packages of marijuana to Peterson's mother in Billings, where Peterson's sister, Darci Leudt, and her husband, Todd Leudt, would retrieve the marijuana and distribute it. Peterson arranged to have a portion of the marijuana delivered to Janice Coggins, who "body packed" it inside the prison when she went to visit her husband. Conspirators Darci Leudt, Todd Leudt, and Alfred Peterson were also involved in a conspiracy to distribute methamphetamine into the Montana State Prison.

A grand jury indicted twelve defendants on charges of conspiracy to distribute marijuana (Count 1) and the underlying substantive counts tied to the marijuana conspiracy (Counts 2–18). A jury found Rodriguez, Laprada–Trevino, Pedro Hernandez, Roberta Hernandez, and Peterson guilty of Counts 1–18. Peterson was also found guilty on the methamphetamine counts (Counts 19–22).

## I. Joinder/Severance

Defendants Rodriguez, Pedro Hernandez and Roberta Hernandez argue that the district court erred under Rule 8 when it denied their motions to sever offenses and parties at the outset of trial. Alternatively, Defendants argue that the district court erred under Rule 14 by denying their later motion to sever.

### a. Improper Joinder

Rule 8 permits joinder of offenses or parties in the same indictment when offenses or parties are part of "the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." *Fed.R.Crim.P. 8(b).* A "series

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by 9th Cir. R. 36–3.

of transactions" exist if there is a "logical relationship" between the transactions, which is typically shown "by the existence of a common plan, scheme, or conspiracy." *United States v. Vasquez–Velasco*, 15 F.3d 833, 843–44 (9th Cir.1994) (citations omitted).

██ Although the marijuana and methamphetamine conspiracies shared the common activity of smuggling drugs into the Montana State Prison, the methamphetamine activity does not naturally flow from the marijuana activity. *See United States v. Sarkisian*, 197 F.3d 966, 976 (9th Cir. 1999) (holding that joinder is improper where one criminal activity did not naturally flow from the separate criminal conduct). The conspiracies are not logically related. *See id.* Moreover, the evidence submitted to prove the two conspiracies does not substantially overlap. *See Vasquez–Velasco*, 15 F.3d at 844 (concluding that joinder should be permitted where the common activity constitutes a substantial portion of proof of the joined charges). The district court erred by joining Counts 1 through 18 with 19 through 22.

b. Prejudice

██ However, improper joinder under Rule 8 is subject to harmless error review. *Sarkisian*, 197 F.3d at 976. "[A]n error involving misjoinder affects substantial rights and requires reversal only if the misjoinder results in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict." *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986).

Defendants argue that they were prejudiced by inflammatory evidence introduced to prove the methamphetamine conspiracy. But throughout the trial the district court provided limiting instructions explaining when evidence should be considered only as to Alfred Peterson. "Judicial economy justifies reliance on the jury to follow the instructions of the court that segregate the evidence and limit the applicability of the evidence to each defendant." *United States v. Matta–Ballesteros*, 71 F.3d 754, 771 (9th Cir.1995), *cert. denied*, 519 U.S. 1118, 117 S.Ct. 965, 136 L.Ed.2d 850 (1997) (citations omitted). In light of the court's limiting instructions, Defendants were not prejudiced by a joint trial. *See Sarkisian*, 197 F.3d at 977 (concluding that limiting instructions effectively cured any risk of unfair prejudice presented by a joint trial).

Rodriguez alone argues that the court improperly joined counts related to the importation of marijuana into the Montana State Prison with counts related to the distribution of marijuana around the Billings, Montana area. Rodriguez's argument fails because a logical relationship exists between the importation of marijuana through Pedro Hernandez into the prison and into the Billings area. *See Vasquez–Velasco*, 15 F.3d at 843–44 (A logical relationship is typically shown "by the existence of a common plan, scheme, or conspiracy").

c. Severance

Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). As stated in the previous section, Defendants failed to demonstrate any prejudice from misjoinder. For the same reasons, Defendants have failed to demonstrate the "clear, manifest, or undue prejudice" required to justify reversal for the district court's failure to sever. *Vasquez–Velasco*, 15 F.3d at 845–46.

In addition, Pedro Hernandez asserts that he was prejudiced by the court's refusal to sever his trial from the trial of co-defendant Rodriguez. Pedro Hernandez bases his argument on the fact that Josephine Espinoza, a witness who would have offered testimony exonerating him, refused to testify because she did not want to testify against Rodriguez. Pedro Hernandez's argument fails because Espinoza's testimony is insufficient to show the required prejudice, as it merely contradicts, at best, the government's evidence tying Pedro Hernandez to the marijuana conspiracy between 1995 and 1997. *See United States v. Mariscal*, 939 F.2d 884, 885–86 (9th Cir.1991) (citations omitted) (The proffered testimony must be substantially exculpatory. Testimony merely contradicting portions of the government's proof is insufficient).

## II. Variance/Duplicity

Defendants Rodriguez, Pedro Hernandez and Roberta Hernandez argue that a fatal variance occurred when they were convicted of one conspiracy because evidence at trial proved more than one conspiracy.

A variance occurs where an indictment charges a single conspiracy and the evidence indicates two or more possible conspiracies. *United States v. Perry*, 550 F.2d 524, 531 (9th Cir.1977), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 228 (1977). The principles used to assess whether joinder was prejudicial are relevant for analysis of variance. *See Kotteakos v. United States*, 328 U.S. 750, 774, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (recognizing that the problem of variance between indictment and proof "is also essentially one of proper joinder").

The evidence, viewed in the light most favorable to the government, see *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct.

2781, 61 L.Ed.2d 560 (1979), was sufficient for a jury to rationally conclude that one conspiracy existed to distribute marijuana to Montana between 1992 and 1997. *See Perry*, 550 F.2d at 531. While participants played different parts at different times during the overall conspiracy, the primary players and the object of the conspiracy remained the same throughout. *See United States v. Patterson*, 819 F.2d 1495, 1502 (9th Cir.1987) (A conspiracy exists where there is one overall agreement to perform various functions to achieve the objectives of the conspiracy). No variance exists between the indictment and the proof adduced at trial.

Similarly, because evidence at trial supported one marijuana conspiracy, Count 1 of the indictment was not duplicitous. *United States v. Payseno*, 782 F.2d 832, 835 n. 4 (9th Cir.1986) (An indictment is duplicitous if it charges two or more wholly distinct crimes in a single count).

## III. *Pinkerton* Theory/Bill of Particulars

Defendants argue that their convictions under the *Pinkerton* theory violated due process because 1) the indictment was not clear and specific, 2) Defendants were found guilty of offenses for which they were not named, and 3) the relationship between Defendants and the substantive offenses is tenuous.

Defendants' first two contentions are meritless. The indictment was clear and specific and gave Defendants notice that they were being charged with all 18 counts. With respect to Defendants' third contention, the evidence proves otherwise. The jury could find, relying on substantial testimony regarding Defendants' heavy involvement in the overall conspiracy, that Defendants could foresee the acts of other conspirators. *Pinkerton v. United States*, 328 U.S. 640, 647–48, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (Each conspirator is lia-

ble for the criminal acts of his co-conspirators if the offense could reasonably have been foreseen as a necessary and natural consequence of the unlawful agreement).

■ In addition, the district court did not abuse its discretion in denying Rodriguez's Motion for a Bill of Particulars because the indictment apprised Rodriguez of the acts charged against him and enabled him to prepare an adequate defense. *See United States v. Robertson,* 15 F.3d 862, 873–74 (9th Cir.1994) (a court may properly deny a motion for a Bill of Particulars in a drug conspiracy case where there is no risk of prejudice or surprise to defendants), *rev'd on other grounds,* 514 U.S. 669, 115 S.Ct. 1732, 131 L.Ed.2d 714 (1995) (per curiam).

## IV. Double Jeopardy/Vindictive Prosecution

Pedro Hernandez asserts that double jeopardy bars his conviction for conspiracy to distribute marijuana and that the government violated his due process rights through vindictive prosecution. In January 1993, Pedro Hernandez was charged with conspiracy to distribute marijuana, possession with intent to distribute marijuana, and two firearms charges. Hernandez was acquitted of the conspiracy charge, but was convicted of possession with intent to distribute marijuana and a firearms violation.

### a. Double Jeopardy

■ To determine whether two conspiracy counts charge the same offense and therefore place the defendant in double jeopardy, we must consider (1) the differences in the periods of time covered by the alleged conspiracies; (2) the places where the conspiracies were alleged to occur; (3) the persons charged as co-conspirators; (4) the overt acts alleged to have been committed; and, (5) the statutes alleged to

have been violated. *United States v. Stoddard,* 111 F.3d 1450, 1454 (9th Cir.1997) (*citing United States v. Guzman,* 852 F.2d 1117, 1120 (9th Cir.1988)). "Our goal in the inquiry is to determine if there was more than one agreement." *Id.* at 1457.

■ Some overlap exists between the two conspiracies, but significant differences in the members, Pedro Hernandez's role, overt acts, and goals of the conspiracies indicate that there were two distinct agreements and that Pedro Hernandez's double jeopardy rights were not violated.

### b. Vindictive Prosecution

■ No presumption of vindictive prosecution applies even though the government prosecuted Pedro Hernandez on two previous occasions. The present prosecution does not "arise out of the same nucleus of operative facts" as the previous attempts to prosecute Pedro Hernandez. *See United States v. Martinez,* 785 F.2d 663, 669 (9th Cir.1986) (A presumption of vindictiveness is raised when a prosecutor, faced with a disappointing result, brings an additional charge which 'arises out of the same nucleus of operative facts' as the original charge).

## V. *Money Laundering Case*—Sufficiency of the Evidence

■ In November 1993, Roberta Hernandez made a cash down payment to purchase property located in Absarokee, Montana (also called the Abbattoir property). In 1994, Pedro Hernandez arranged for $17,000 of marijuana proceeds to be delivered to Roberta Hernandez for the final payment on the house, which was made on October 20, 1994. A deed was executed in favor of Ruth Butcher, who had agreed with the Hernandezes to place the property in her name.

Pedro Hernandez argues that the government failed to prove that he participated in a financial transaction constituting money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) before the statute of limitations expired.

If, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, there is sufficient evidence to support a conviction. *United States v. Deeb*, 175 F.3d 1163, 1168 (9th Cir.1999). Although the evidence regarding the second payment on the house in Absarokee was not consistent, substantial testimony supports the jury's conclusion that Pedro Hernandez initiated the second payment for purchase of the property in October 1994 and that the payment came from drug proceeds.

## VI. *Probation Violation Case*—Delay in Probation Hearing

Following Pedro Hernandez's 27 month sentence for an earlier conviction, prosecutors filed a petition for revocation of Hernandez's supervised release and issued a warrant for his arrest. Hernandez was subsequently arrested on other charges and taken into federal custody on March 9, 1998, when he was formally arrested on probation violation charges. Hernandez appeared on the revocation petition on April 28, 1999, and a formal revocation hearing was held on May 10, 1999, when Hernandez's supervised release was revoked and he was sentenced to 30 months in custody.

A prompt probable cause hearing is required "[w]henever a person is held in custody on the ground that the person has violated a condition of probation. . . ." *Fed. R.Crim.P. 32.1(a)(1);* see *Morrissey v.*

*Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Thereafter, the revocation hearing shall be held within a reasonable time. *Fed. R. Crim P. 32.1(a)(2).*

More than a year passed after Pedro Hernandez's arrest for violation of probation before he appeared before the court on those charges. Nonetheless, Hernandez has not shown that the delay in the probation revocation hearing prejudiced his ability to contest revocation. *See United States v. Wickham*, 618 F.2d 1307, 1310 (9th Cir.1979) (holding parole revocation due process requirements not violated unless unreasonable delay and prejudice to petitioner's ability to contest revocation). There is no due process violation.

For the reasons stated above, the judgments of the district court are *affirmed.* **

---

** In a separate, published opinion filed concurrently herewith, we vacate Pedro Hernandez's sentences and remand his case for resentencing.